PRICE et al. v. COUNTY SCHOOL TRUSTEES OF NAVARRO COUNTY et al. (No. 7783.)

(Court of Civil Appeals of Texas. Dallas. March 3, 1917.)

1. QUO WARRANTO ⬉⚊5 — SCHOOLS AND SCHOOL DISTRICTS — REDISTRICTING — RESTRAINT.

A suit by district school trustees and taxpayers against the county school trustees to

enjoin the abolition of a school district and its annexation to two other districts could be maintained as an ordinary suit between the parties, and need not be by a proceeding in quo warranto under the statute to review the acts of the county school trustee, since the statutory right to proceed by quo warranto is not an exclusive remedy, but is cumulative of other remedies.

[Ed. Note.—For other cases, see Quo Warranto, Cent. Dig. § 6.]

2. QUO WARRANTO &c=3 — SCHOOLS AND SCHOOL DISTRICTS — REDISTRICTING — RESTRAINT.

Whether the acts of the county school trustees in abolishing a school district and annexing it to two other districts was an abuse of their discretion may not be tested by the proceeding in quo warranto under the statute, which is a remedy employed only to test the actual right to an office or franchise.

[Ed. Note.—For other cases, see Quo Warranto, Cent. Dig. § 4.]

3. MANDAMUS &c=79 — SCHOOLS AND SCHOOL DISTRICTS—REDISTRICTING—RESTRAINT. ·

As mandamus is not available to require the performance of official acts involving the exercise of discretion, under Acts 34th Leg. c. 34, giving county school trustees general management and control of the public free schools in each county, the county school trustees have a broad discretion, and the trustees of a district could not prevent the proposed abolishment of the district, or require the trustees to retrace their steps to the extent they had proceeded, and its annexation to other districts by writ of mandamus.

[Ed. Note.—For other cases, see Mandamus, Cent. Dig. §§ 170–176.]

4. STATUTES &c=181(1)—CONSTRUCTION—RULE.

By the direct provisions of Vernon's Sayles' Ann. Civ. St. 1914, art. 5502, the statutory rule of construction is that the courts shall look diligently for the intention of the Legislature, keeping in view at all times the old law, the evil, and the remedy.

[Ed. Note.—For other cases, see Statutes, Cent. Dig. § 259.]

5. SCHOOLS AND SCHOOL DISTRICTS &c=33— CONSOLIDATION — DISTRICT COURTS—JURISDICTION — REVIEW OF ACTS OF COUNTY SCHOOL TRUSTEES.

Under Acts 34th Leg. c. 36, giving the district court general supervisory control of the action of the county board of school trustees in creating, changing, and modifying school districts, the district court had jurisdiction of a petition to enjoin the action of the county school trustees ·in abolishing a school district and annexing it to two other districts.

[Ed. Note.—For other cases, see Schools and School Districts, Cent. Dig. § 55.]

6. SCHOOLS AND SCHOOL DISTRICTS &c=39— ACTIONS OF COUNTY TRUSTEES—REVIEW BY DISTRICT COURT.

Acts 34th Leg. c. 36, § 4a, giving district court general supervisory control over the action of a county board of school trustees creating, changing, and modifying school districts, is not controlled by section 10 of the act, Vernon's Sayles' Ann. Civ. St. 1914, arts. 4509, 4510, providing for appeals from the actions of the trustees to the state superintendent, and thence to the state board of education; but appeals from the action of the school trustees may be made to the district court.

[Ed. Note.—For other cases, see Schools and School Districts, Cent. Dig. §§ 68, 69.]

7. SCHOOLS AND SCHOOL DISTRICTS &c=33— CONSOLIDATION—TEMPORARY INJUNCTION— DISSOLUTION—DISCRETION OF COURT.

In an action to enjoin the abolition of the school district and its annexation to two other districts by county school trustees, where the court's action in dissolving a temporary injunction was not based on the merits, but was upon the theory that the court was without jurisdiction, the rule that dissolution of a temporary injunction is largely· a matter of discretion is without force.

[Ed. Note.—For other cases, see Schools and School Districts, Cent. Dig. § 55.]

8. SCHOOLS AND SCHOOL DISTRICTS &c=33— CONSOLIDATION — INJUNCTION—PLEADING— DEMURRER.

In an ·action to enjoin the action of county school trustees in abolishing a school district and annexing it to other districts, a general demurrer to the petition did not raise the issue of the form and manner of presenting the suit, such as the right of the district trustees to maintain the suit in the capacity ·in which they sued.

[Ed. Note.—For other cases, see Schools and School Districts, Cent. Dig. § 55.]

9. SCHOOLS AND SCHOOL DISTRICTS &c=33— REDISTRICTING—PETITION—SUFFICIENCY.

In a suit to enjoin the action of county school trustees in abolishing a school district and annexing it to other districts, a petition stating that since its creation the district has annually· maintained a well attended free public school for the required period, that the school now located in the district is convenient and accessible to the children in the district, as the majority reside within less than a mile thereof, while under the arrangement proposed they would be at such distance from the schoolhouse as to make their attendance impossible during the fall and winter months, and that some of them would be required to walk a distance of 4 miles, some 3 miles, and some 2½ miles, held sufficient to raise the issue of an abuse of the discretion of the county school trustees.

[Ed. Note.—For other cases, see Schools and School Districts, Cent. Dig. § 55.]

10. SCHOOLS AND SCHOOL DISTRICTS ·&c=38— REDISTRICTING—POWER OF COMMON TRUSTEES.

Under Gen. Laws 1915, c. 68, giving the county school trustees general management and control of the free public schools in each county, the question of annexing the territory of a school district abolished to other districts need not be submitted to the vote of the districts to be affected, in the absence of a specific requirement in the statute.

[Ed. Note. ·For other cases, see Schools and · School Districts, Cent. Dig. § 66.]

11. SCHOOLS AND SCHOOL DISTRICTS &c=33— REDISTRICTING.

The fact that the value of the citizens' property would be lessened by a change in the lines of a common school district, although possibly admissible to show the result of a proposed change could not prevent the change if it were for the best interests of the schools.

[Ed. Note.—For other cases, see Schools and School Districts, Cent. Dig. § 55.]

Appeal from District Court, Navarro County; H. B. Daviss, Judge.

Action by G. P. Price and others against the County School Trustees of Navarro County and others. From a judgment dissolving on general demurrer a temporary writ of injunction, issued after ex parte hearing upon the application of plaintiffs, defendants

appeal. Reversed, and remanded for another trial, not inconsistent with the opinion.

Callicutt & Johnson, of Corsicana, for appellants. Richard Mays, of Corsicana, for appellees.

RASBURY, J. This is an appeal from the action of the trial judge in entering final judgment in this case dissolving, on general demurrer, a temporary writ of injunction, issued after ex parte hearing upon application of appellants. From the action of the trial court in the respect stated, appellants have appealed and assigned error, challeging same.

Since the case turns upon the action of the court in sustaining appellees' general demurrer, it becomes necessary to state the parties, the pleading and the facts deducible therefrom. The application for injunction was presented by the trustees of common school district No. 82 of Navarro county, as trustees and individually, joined by T. S. Meador and 15 other patrons of the school maintained in the district, as well as citizens and taxpayers thereof. The parties against whom the injunction was sought were the county school trustees of Navarro county, the county superintendent as such, and as secretary of the board of county school trustees, the county judge, the commissioners' court, the county clerk, the county tax assessor, the county surveyor, the trustees of common school district No. 60, and the trustees of common school district No. 45. The substance of the facts alleged was: About July 11, 1892, the commissioners' court of Navarro county, upon the petition of a majority of the legal voters having a voice therein, lawfully created appellant common school district No. 82, with an area more than 6 miles square and containing about 4,000 acres of land. Continuously since the creation of said district there has been annually maintained therein a well-attended free public school for the benefit of its patrons. The territory in the district is rich, fertile, and populous, having about 20 voters, and for several years past an average of 40 children within the scholastic age. The money received from the state has been and is now amply sufficient to maintain the school for the required period, but in the year 1916 the taxpayers of the district supplemented said fund by voting a special tax of 20 cents on the $100 of valuation, in order that the school might be maintained more efficiently and for a longer period of time. On or about May 20, 1916, upon petition of certain taxpayers, voters, and patrons of appellee common school district No. 60, the county school trustees, also appellees, by resolution, added to said appellee common school district No. 60 2,600 acres of appellant's district, and to appellee common school district No. 45 the remaining 1,300 acres composing the district, and ordered abolished appellants' district. The school building lo-

cated in appellants' district is convenient and accessible to the children in the district, since a majority of them reside within less than a mile thereof, and some within a few hundred yards thereof, while under the arrangement proposed they would be at such distance from the schoolhouse as to make their attendance impossible, particularly during the fall and winter months, since the children in appellants' district are of tender years, and since it is an average of 3 miles from their homes to the school buildings in the proposed districts, and which would result in said children being deprived of the benefit of the public free schools. (The petition recites the names of 10 children within scholastic age living in convenient proximity to the present school, but who under the proposed arrangement will have to travel some a distance of 4 miles, some 3 miles, and some 2½ miles.) Many of the taxpayers, citizens, and voters in common school districts No. 60 and No. 45 are opposed to abolishing appellant common school district No. 82, and annexing it to said districts. A petition opposing such action was circulated in said common school district No. 60, and signed by twice as many as signed the petition asking such action. Appellees intend and will carry into effect the resolution adopted, by having appellee the county surveyor run the lines separating appellant district, which appellee county superintendent will enter in the minutes of the county trustees; and the other officers named will in their order and to the extent of their authority make such proposed action final.

Before discussing the various contentions of the parties, a brief review of the authority now conferred upon county school trustees and the restrictions thereof will be of assistance in considering the issues presented on this appeal. They have "general management and control of the public free schools in each county." They "are authorized to exercise the authority heretofore vested in the county commissioners' court with respect to subdividing the county into school districts and to making changes in school district lines." They "shall constitute a body corporate," and as such "may sue and be sued." The district court has "general supervisory control of the actions of the county board of school trustees in creating, changing, and modifying school districts." Gen. Laws 34 Leg. (1915) p. 68. The foregoing we understand to be the last amendment of the law on the subjects the amendments deal with that have any application to the precise issues presented on this appeal. There are many other provisions in the amendment, such as the right of the county trustees to consolidate common school districts for high school purposes, the classification of schools, prescribing the course of studies, arranging free transportation for students, employing teachers, etc. The authority formerly vested in the county com-

missioners' courts with respect to creating and modifying school district lines, and now conferred on county trustees and referred to in the amendments · just enumerated, is, in addition to the right to subdivide their respective counties into convenient school districts, the right to "reduce the area of any common school district, as may be necessary for the best interests of the school children * * *" (article 2815, Vernon's Sayles' Civ. Stats.), together with the right when they deem it necessary to redistrict a part or all of said county, or consolidate two or more adjacent districts and subdivide districts (article 2816, Vernon's Sayles' Civ. Stats.). The statutes also provide for the election of district school trustees, and that they shall in the manner prescribed have the control and management of the schools in their respective districts, which fact is referred to as showing the general scheme, rather than for any significance in its relation to the present case. Nor do we attempt to set out the various changes in the law and the consequent lack of application of decisions based upon former laws to those now controlling. The issues presented by counsel can be more conveniently discussed by a consideration of appellees' counterpropositions offered in support of the action of the trial court, and we will observe that order of discussion.

[1] The first contention is that the remedy of any person interested in preserving the status quo of the appellant district was quo warranto by the state or its proper officer, on the relation of the complaining parties, and not by the district school trustees and the taxpayers, citizens, and patrons of the school. It is a fact, as our statement of the case discloses, that this proceeding is an ordinary suit invoking the injunctive process of the court to restrain appellees from further acts contemplating the abolishment of common school district No. 82, and its annexation to the two other districts, and is prosecuted by appellant common school district No. 82 and by certain taxpayers, citizens, and school patrons in said district. As a consequence the issue raised is squarely presented. On this question we recently reached the conclusion that school districts, as such, and interested taxpayers, citizens, and school patrons, could maintain such suit, and that the district court could use its injunctive process in aid thereof when the facts authorized it. Collin County School Trustees v. Stiff, 190 S. W. 216. We reached the conclusion we did on the ground that the statute conferring the right to proceed by quo warranto is not an exclusive remedy, but is by its express provisions cumulative of other remedies, and that if the quo warranto statute had not been in existence the parties could have proceeded as they did, aided by injunction, and that such right as we have said was reserved to litigants by the quo war-

ranto statute. It was so ruled by the Supreme Court in McAllen v. Rhodes, 65 Tex. 348, cited by us in support of our conclusion. We do not understand that special statutory remedies are exclusive. Generally speaking, if a right exists, arising on contract or in tort, a corresponding remedy for its enforcement arises ·in law or equity, and special statutory remedies provided by the Legislature, in the absence of at least express statutory prohibition, are merely cumulative. It has been declared that the statutory remedy of forcible entry and detainer, while giving landlords a summary method of ousting tenants holding over, is not exclusive, but that the landlord may bring an ordinary suit for possession; also that the landlord's statutory lien and remedy may be enforced as other liens. Juneman v. Franklin, 67 Tex. 411, 3 S. W. 562. It has also been held that the amendment to the Constitution conferring upon district courts authority to try contested election cases and specifying the manner of conducting such proceedings, only enlarged the court's jurisdiction, without limiting its power "to determine the same question by any other existing mode of procedure." Gray v. State ex rel. Langham, 92 Tex. 396, 49 S. W. 217. In the case cited the proceeding was by quo warranto, and not by the mode provided by the constitutional amendment, which was claimed to be exclusive. The remedy pursued by appellants is just as efficacious—in fact, more so, it occurs to us—than the one provided by quo warranto, and permits a matter in which the state, when a party, is but a nominal one, to be litigated between those actually at interest. Both remedies existed when the suit was commenced, a resort to either of which was not only the result of the application of reason and principle in construction, but the result as well of the quo warranto statute, which expressly provides that the remedy shall be cumulative, not exclusive.

[2] Further, while we have proceeded on the theory that both remedies are optional co-ordinate ones, whether the proceeding by quo warranto is correct is not altogether free from doubt. It was said, in a case by quo warranto involving the right of a justice of the peace to exercise his jurisdiction in territory detached from his precinct by the commissioners' court after his appointment, that:

"Since the remedy by quo warranto, or information in the nature thereof, is employed only to test the actual right to an office or franchise, it follows that it can afford no relief for official misconduct, and cannot be used to test the legality of the official action of public or corporate officers. * * *"

The proper remedy would seem to be by injunction. State ex rel. Dowlen v. Rigsby, 17 Tex. Civ. App. 171, 43 S. W. 271. In refusing the writ of error the Supreme Court said, among other things:

"The Court of Civil Appeals were inclined to doubt whether this proceeding was authorized by law, and we are disposed to agree with them." State ex rel. Dowlin v. Rigsby, 91 Tex. 351, 43 S. W. 1101.

The purpose of the instant suit reduced to its most simple analysis is to prevent the abolishment of appellant common school district No. 82, because to do so would not be for the best interests of the school children, or, which is the same thing, that the county trustees, in the exercise of the powers conferred upon them, have abused their discretion, which is but to say they have been guilty of "official misconduct," and which, to use the language of the case just cited, may not be tested by the proceeding in quo warranto.

As supporting its position appellee cites Crabb v. Celeste Ind. School District, 105 Tex. 194, 146 S. W. 528, 39 L. R. A. (N. S.) 601, Ann. Cas. 1915B, 1146. The issue involved in that case is entirely dissimilar to the issue here presented, as will appear by examination of the opinion in that case. The question there was whether the trustees had in a lawful manner exercised the authority conferred upon them by law in annexing certain territory to Celeste independent school district. The Supreme Court said that the district, being a quasi municipal corporation, was acting under color of law, and the legality of its acts, or the right to do the thing it did do, could only be challenged by the state in a proceeding by quo warranto. We do not understand the case at bar to be one claiming that the county school trustees are proceeding unlawfully or ultra vires, but that it is proceeding in a lawful way to do a thing which will be to the detriment of the schools and hence an abuse of their discretion, which is sought to be reviewed in the court charged with the duty of supervising their acts.

[3] It is also urged that appellants' remedy is by mandamus. The general and well-settled elementary rule is that the writ of mandamus is not available for the purpose of requiring the performance of official acts by persons, officers, tribunals, or corporations involving the exercise of discretion. We think it quite clear that the statutes cited, and which constitute the authority of county school trustees, confer broad discretion upon such trustees, and that hence appellants could not prevent the consummation of the proposed abolishment of the school district, or require them to retrace their steps to the extent they had proceeded by such writ, since to do so would be to interfere with their discretion.

[4, 5] This brings us in natural order to the contention that the general supervisory control of the district court of the actions of the trustees in creating, changing, and modifying districts does not vest such courts with authority to prevent trustees from abolishing school districts. We believe the con-struction sought to be placed upon the law too literal. The statutory rule of construction is that courts shall "look diligently for the intention of the Legislature, keeping in view at all times the old law, the evil, and the remedy." Article 5502, Vernon's Sayles' Civil Stats. The absence in the old law of any declaration that any given court might supervise the action of the trustees, the numerous suits that constantly arise with reference to the creation, modification, and abolishment of school district lines, point unerringly, we believe, to the evil and the remedy sought; i. e., that some judicial tribunal might in an orderly way supervise, for the best interests of all concerned, the actions of the trustees. And that the lawmakers should have intended that the district court could supervise the trustees in every respect, save when districts were wholly abolished, would be to argue that it was intended only to correct the lesser evil. However, we think it clear that the result in the instant case was as much to change and modify common school district No. 82 as it was to abolish it. The district was not abolished, in the sense that the children in the territory composing the old district were without school facilities, but was changed and modified by attaching a portion to one district and a part to another. Particularly do we think such an arrangement was, in the broad and general meaning of the term, a "change" in the district, as will appear from the definition of the word. Accordingly we conclude that the authority conferred upon district courts, even though special, was broad enough to include the relief sought by the petition.

[6] For the reasons therein stated, we also adhere to our former ruling in Collin County School Trustees v. Stiff, supra, following Clark v. Hallam, 187 S. W. 964, that the Legislature having conferred jurisdiction upon the district court to supervise the matters involved here, the right to litigate such matters in the district court is not controlled by articles 4509, 4510, Vernon's Sayles' Civ. Stats., providing for appeals from acts of the trustees to state superintendent, and thence to state board of education.

[7, 8] It is next urged that the dissolution of a temporary injunction is largely a matter of judicial discretion, and appellees having filed sworn answer denying the material allegations of appellants' petition, the action of the district court should not be disturbed. The rule is correctly stated, and has in many instances formed the basis of the action of appellate courts in sustaining the action of the trial court in such cases. The difficulty of its application here, however, lies in the fact that it appears that the able district judge who tried the case did not consider the facts as a basis for his judgment, but, as we have shown, sustained a general demurrer leveled against the petition, the effect of which was to admit the truth of the

facts alleged, but to assert that they did not entitle appellants to any relief from the court. Incidentally, while the general demurrer did not, in our opinion, raise the issue of the form and manner of presenting the suit, such as the right of appellants to maintain the suit in the capacity in which they sued, counsel stated in argument that the court did consider such issue, and we have for that reason so treated it. The court's action, then, being based, not upon the fact that appellees met the equities of the case alleged by appellants, but upon the theory that the appellants could not maintain the suit, and that court was without jurisdiction, and by implication that the facts alleged did not entitle them to any relief, the rule invoked is obviously without force.

[9] This brings us, then, to the facts alleged by appellants in their petition and their sufficiency. Without attempting to state what, in our opinion, would constitute facts sufficient to warrant the court in enjoining trustees as herein sought, or what would constitute facts sufficient to show an abuse of the discretion of the trustees, we do conclude that those alleged in appellants' petition were sufficient to raise an issue in that respect for determination in the ordinary way. The trial court, as we gather from the briefs, never in fact determined contrarily, but sustained the general demurrer on other grounds.

[10] Some contention is made with reference to the failure of the county trustees to submit the question of annexing the territory constituting appellants' district to districts Nos. 60 and 45 to a vote of those to be affected. We have been unable to find in the many acts on the subject as they now exist any such requirement. It would seem that as the law now stands the trustees are vested with a broad and flexible discretion in the exercise of their authority, with the concurrent right on the part of those interested to review their acts in the district court.

[11] Also it is claimed that the change in districts as proposed in the present case will affect the value of appellants' property and result in private injury to them. We believe the fact that the value of the citizens' property would be lessened by a change in the lines of a common school district could not be used to prevent the change, if it was in fact for the best interests of the schools. Conceivably a case might be presented which would make such fact admissible in evidence, as tending to prove the result of a proposed change of district lines intended, not for the best interests of the school, but for the unlawful purpose of injuring the complaining parties.

For the reasons stated, it becomes our duty to reverse the judgment, and remand the case for another trial, not inconsistent with the views herein expressed.