Ernest S. Goens, State's Atty., of Austin, for the State.

BEAUCHAMP, Judge.

The appellant was given twelve years in the penitentiary on a charge of assault to murder.

The evidence reveals that appellant was a porter in a hotel in the City of Amarillo. Across the street, or near by, was a sandwich stand to which he was often sent by customers of the hotel. The appellant is a negro and the prosecuting witness, who was a cook in the sandwich shop, is a white man. A white girl, a waitress in the sandwich shop, was the subject of a remark by appellant which made the cook very mad, and gave rise to the difficulty.

It is not necessary to detail the facts, which are rather inflammatory by their nature. Much of this testimony was improperly admitted. Such testimony will not be considered because we believe the evidence is insufficient to show an intent to murder on the part of appellant. The case will be reversed on the insufficiency of the evidence.

The State's Attorney in his brief says, "Appellant brings forward three bills of exception; but, in our opinion, the controlling and important question presented for review is the sufficiency of the evidence to support this conviction. Obviously, we think, the knife was not per se a deadly weapon, and yet we recognize the general rule that where the instrument itself is not a deadly weapon, the intent to kill may be established by other facts—that the wounds inflicted may be looked to in determining whether or not the knife was a deadly weapon; but, in view of the fact that the testimony of the attending physician indicates that the wounds inflicted were not of a serious nature unless infection set in, and in view of the further fact that there is no proof of a specific intent to kill, we are inclined to seriously doubt that the evidence is sufficient to support a conviction and twelve-year penalty. For authorities, see Branch's Annotated Penal Code, Sections 1636-37-39; also Miller v. State, Tex.Cr.App., 183 S.W.2d 175, authorities therein cited; and Trimble v. State, Tex. Cr.App., 190 S.W.2d 123, and authorities cited."

Examination of the record supports the statement of the State's Attorney, and the authorities cited by him sufficiently sustain our conclusion that the evidence is insufficient to support a conviction for assault to murder.

The judgment of the trial court is reversed and the cause is remanded.

**COUNTY SCHOOL TRUSTEES OF CALLAHAN COUNTY et al. v. DISTRICT TRUSTEES OF DIST. NO. 15 (HART) COMMON SCHOOL DIST. OF CALLAHAN COUNTY et al.**

No. 2534.

Court of Civil Appeals of Texas. Eastland.

Feb. 1, 1946.

Rehearing Denied March 8, 1946.

O. C. Funderburk and Frank Sparks, both of Eastland, for appellants.

B. L. Russell, of Baird, and F. D. Wright, of Cisco, for appellees.

LONG, Justice.

On the 16th day of February, 1945, the School Trustees of Callahan County at a meeting held at Cross Plains (not the county seat of said county) passed an order grouping Colony Common School District No. 16, Hart Common School District No. 15, Zion Hill Common School District No. 18, and Putnam Independent School District to form and establish a rural high school district. Also at said meeting the board abolished Erath Common District No. 14 and attached said territory to the Putnam Independent School District. Thereafter, the trustees of Hart Common School District No. 15 instituted this suit against the county school board and sought to have the order entered at Cross Plains on February 16, 1945, set aside on the grounds of fraud, abuse of discretion and arbitrary action on the part of the board. Defendants answered said suit and leveled a number of exceptions to the petition filed therein. On June 7, 1945, the parties appeared before the trial court and

the questions of law involved in the suit were presented. The court took the questions presented under advisement, and while the same were being considered, the County Board of Trustees caused notices to be given to the trustees of the various school districts involved to appear on June 11, 1945, before such Board at Baird (the county seat of Callahan County). The trustees of the common school districts and the patrons interested therein appeared before the board on said date and presented their views and opposition to the attempted creation of the rural high school. After a hearing upon such matters, the board by its resolution recognized that the order entered February 16, 1945, was void, for the reason that the meeting was held at Cross Plains at the place of business of one of its members and not at the office of the County Superintendent at Baird, the County seat of said county, as provided by law, and such order was set aside and held null and void. The board then proceeded to enter a new order by which it found that common school districts Nos. 15, 16 and 18 and the Putnam Independent School District should be grouped to form a rural high school district. It further found that each of said common school districts had less than 400 scholastic population, and that Putnam Independent School District had less than 250 scholastic population, and that such school districts were contiguous and might be included in a common boundary line, and that the rural districts as formed would contain neither an area in excess of 100 square miles, nor more than seven elementary school districts. No order was entered with reference to the Erath Common School District, save and except as it may have been affected by setting aside the order entered at Cross Plains.

On June 18, 1945, plaintiffs filed their first amended original petition against the County Board of School Trustees, the County Superintendent, the Putnam Independent School District, the trustees of Colony School District No. 16 and the trustees of Zion Hill Common School District No. 18, and attacked both orders upon the ground of fraud, abuse of discretion and arbitrary action on the part of said board. E. G. Johnson and others, patrons and tax payers of the Zion Hill District, intervened and adopted the allegations of plaintiffs' petition. A trial was had before the court with the aid of a jury. In response to special issues submitted, the jury found that the action of the Board of County Trustees in grouping the Hart School District and others with the Putnam District on June 11, 1945, was arbitrary, that they abused their discretion, and that they were guilty of fraud; that such grouping was done primarily for the benefit of the Putnam School District, and without due regard to the best interests of the school children of said common school districts. Special Issue No. 4, as submitted, and the answer thereto was as follows:

"Did the County Board of School Trustees of Callahan County in grouping on June 11, 1945, the Common School Districts involved with the Putnam Independent School District act because of any undue influence, improper motive, want of effort to become duly informed and to express and (an) impartial and just conclusion in their actions?

"Answer: Yes."

Based upon the findings of the jury, the trial court entered its judgment cancelling, annulling and setting aside the orders of the county school board passed on the 16th day of February, 1945, and on the 11th day of June, 1945. Defendants, the County Board of School Trustees and County Superintendent, having duly appealed to this court.

The order of February 16, 1945, entered by the Board at a meeting held at Cross Plains was null and void. The statute provides that the meetings of such board must be held at the office of the county superintendent in the county seat of the county. Article 2687, Revised Civil Statutes, Vernon's Ann.Civ.St. art. 2687. Counsel for the board and the board, prior to and at the time of the trial of this cause on its merits, recognized the invalidity of such order, and upon the trial of the case the only real issue was the validity of the order entered June 11, 1945. The judgment of the court, insofar as it set aside the order of February 16th, is correct.

Defendants base their appeal upon 15 points. We have given all of the points raised and the entire record in this case our most careful and earnest consideration. The defendants contend that the evidence is insufficient to support the findings of the jury of fraud, abuse of discretion and arbitrary action on the part of

the school board. We believe that such contention must be sustained. On this question we have attempted to view the testimony in the most favorable light possible to the plaintiffs. The evidence discloses that several years ago there was established what was known as the Union Rural High School in Callahan County, and that the common school districts involved in this litigation, except Zion Hill, were part of such rural high school district. About 1935 the school building of such rural high school was destroyed by fire and was never rebuilt. Since that time the common school districts have been transferring some pupils to Moran in Shackelford County and others to Cisco and Scranton in Eastland County and some to Putnam in Callahan County. For some time after the destruction of the school building the children from the Hart District attended the Putnam school, but this arrangement was unsatisfactory, and they discontinued going to Putnam and thereafter attended the school at Moran. A majority of the patrons of all the districts involved were satisfied with the arrangements that had been made with reference to where their children were attending school and were opposed to the grouping of such common districts with the Putnam District for the purpose of creating a rural high school. The Moran and Putnam schools are of about the same classification. However, the Putnam school had been going down and decreasing in school attendance. The distance that the pupils would be compelled to travel in attending school is about the same to Moran as it is to Putnam. The roads leading from the common school districts to Putnam are about the same kind and character of roads leading to the places where the children were attending school at the time of the grouping of the districts. There is no inconvenience shown to any of the pupils in attending school at Putnam. It is the only high school in that portion of the county, and the rural high school as created by the board of trustees will serve one-fourth of the county. The evidence shows that at Putnam there is located a modern school building with ten classrooms, music room and auditorium. The school building is about five or six years old. It is further shown from the evidence that counsel for the defendants prepared the order entered by the board on June 11, 1945, in their office at Eastland

and mailed the same to Mr. Cook, the member of the school board at Putnam, and that he carried such order with him to the meeting at Baird, and that same was entered as written by counsel for the defendants, with some minor changes. It is also shown that neither the trustees nor the patrons of the common school districts had any notice of the intention of the board to enter the order grouping the districts prior to the meeting held at Cross Plains. For a number of years the County Board had been contemplating the grouping of these districts for the purpose of creating a rural high school. From time to time the Board had been in communication with the State Department of Education about such grouping. We quote from the testimony of Mr. B. C. Chrisman, who, the record discloses, has been School Superintendent of Callahan County for 20 years, and we believe his testimony sums up the situation that existed and confronted the County Board with reference to the schools in that portion of the county.

"Q. Now, Hart, Erath, nor Zion, nor Colony do not maintain any school at all in their District? A. They haven't for years.

"Q. Haven't for a number of years? A. No, sir. And I don't know—I would like to state that, for a number of years there has been quite a turmoil every year or every year or so in the districts. I know that they are pulling them from Cisco, Mr. Cluck is coming out, trying to get them to come over there and a few years ago Erath did transfer to Cisco. The Trustees transferred the school to Cisco and there was quite a protest from the patrons. I don't think there was a single patron of the school that wanted to go to Cisco and I felt like that maybe one of the bus drivers from that territory was—

* * * * * *

"I felt like that he was Trustee and also a bus driver to the Cisco District, that he had been unduly influenced in transferring the District and I refused to approve the transfer and let them go back to Moran. I felt it was nearer Moran and they all wanted to go there; just two or three miles and a good highway and I would like to state, that nearly every year—we have had three law suits in this part of the County and unless it is finally settled someway there will be a turmoil it looks like forever.

* * * * * *

"And the County Board looks at it, that it should be settled definitely.

\* \* \* \* \* \*

"Mr. Cluck comes out in one District and tries to get them to go to Cisco every year or so.

"Q. Mr. Cluck is superintendent of the Cisco School? A. Yes, sir.

"Q. Go ahead. A. In other words, it has just been a kind of no man's land for outside Districts to pull on, not only Putnam but they are all anxious for them. When the Union School burned, first, we had a meeting over at Hart and of course representatives from Moran and Putnam were both there. They were both wanting them, of course, it is natural. They are losing scholastics. I don't blame Moran because they are in the same boat with Putnam.

\* \* \* \* \* \*

"Well, that's just the situation. It is a deplorable condition. The State has set the number of teachers you can have, based on the number of scholastics and the population is falling off. Moran needs them. I realize that and Putnam needs them. The only thing that has held up some of the larger schools is transfer of smaller schools in. That's the only thing that has held them up.

"Q. If the Putnam rural high school should fail would the other county school system profit by it? A. Yes, sir.

"Q. Which ones? A. Well, it would be Moran and Cisco, probably. The county board, I have heard them discuss it and I know their attitude. There is over a hundred square miles, a fourth of the County with just one school and Putnam in the center of it; with over a million dollar valuation and probably over two hundred scholastics, even under the present conditions, why this County has fallen off since 1920—in 1920 there were about four thousand scholastics in the County and there are 2400, just a few over 2400; in other words, this County has lost 1600 scholastics in the last twenty years and the only way that schools have maintained their standard is to transfer in smaller districts and there has been a scramble for them; you all know that. Cisco, Moran, Putnam and all the rest of them and they have maintained their standard by getting Districts to transfer in. Well, we just feel like that this territory is in Callahan County and a good high school, a magnificent building, as fine as you will find in

any town in the State of Texas, the size of Putnam and all we need is scholastics. It is not a question of finance. Putnam is in good financial condition.

"Q. From a school supervisor's standpoint, does it seem to you the logical thing to do, to develop that school territory? A. Well, if he has the interest of the schools in the county at heart it is. Naturally, I want to see the Moran school prosper. I would not do a thing to injure it and have allowed the transfers every year when the law allows me to refuse these transfers, by contract, but I have never done it. I have allowed them to transfer. The trustees signed the contract.

"Q. During the past few years have you sought and hoped that the time would come when they would by agreement get together down in those Districts? A. I felt so. They went to Putnam five years.

"Q. How many law suits have they had within your experience? A. Three law suits.

"Q. Went to the Supreme Court of Texas? A. Yes, sir.

"Q. There has been confusion there among themselves; among those Districts? A. Well, yes, when they united, when they were together, there was quite a good deal of confusion."

■ It is also shown from the evidence that Mr. Cook, one of the members of the County Board, lived at Putnam and was vitally interested in the grouping of the common districts with the Putnam High School and that he had not been attending the meetings of the board for some months prior to the meeting held at Cross Plains on February 16, 1945.

"The fact that the officers or members of the board having power to create or alter school districts are interested parties, in that they are residents and taxpayers of the territory involved, does not affect the validity of their action." 56 C.J. p. 204.

■ The grouping of the common school districts with the Putnam Independent School District was done by the county board under the authority of Article 2922a. There is no question but what the board had the absolute right and authority to enter the order of June 11th and establish the rural high school. Judge Pannill, a former Chief Justice of this Court, in the case of Stinson et al. v. Graham et al., Tex. Civ.App., 286 S.W. 264, 266, writ ref., said:

"The county board of trustees is created by law as a body corporate with full power and control over common school districts, their creation and boundaries * * *, and plenary power as to the creation of rural high school districts. It has been uniformly held that the Legislature may delegate its authority to such agencies."

■■ There was no controversy as to the jurisdictional facts. The school districts were contiguous and the common schools had less than 400 scholastic population and the Putnam District had less than 250 scholastic population. The area included was less than 100 square miles. Under the law, the board had the right to group these districts without the consent of the board of trustees of the various districts and without any kind or character of notice to the people interested therein. Canon et al. v. Rasbury, Tex.Civ.App., 21 S.W.2d 76, writ ref.; McPhail et al. v. Tax Collector of Van Zandt County et al., Tex. Civ.App., 280 S.W. 260, writ ref.; 56 C.J. 204. There was nothing to prevent the County Board from passing the order of June 11th, although it was entered after the institution of the suit. Henderson et al. v. Miller et al., Tex.Civ.App., 286 S.W. 501, writ ref.; Berndt v. Kloss, Tex.Civ.App., 263 S.W. 949. The board had the authority to pass such order even though it was contrary to the will of the majority of the patrons of the common school districts involved.

In the case of County Board of School Trustees of Hale County et al. v. Mayfield Common School District No. 22 et al., Tex. Civ.App., 140 S.W.2d 956, 960, by the Amarillo Court, some of the facts were similar to the facts under consideration. In that case the attorneys came into court the day judgments were rendered with previously prepared orders, which previously prepared orders dissolved the districts that then existed and also previously prepared orders annexing the four common school districts to the Hale Center District and calling an election, and after entry of the orders the county board of school trustees walked from the district court room into the county court room, there held a meeting, and entered the prepared annexation orders and the order for the election. Judge Folley, then a member of that court, now Associate Justice of the Supreme Court, said:

"It is our opinion that there is nothing contained in the last mentioned findings nor in the facts of this case as a whole sufficient to warrant the issuance of the temporary injunction herein. In articles 2922a and 2922c the Legislature has granted to county boards of school trustees great latitude and power in the establishment of rural high schools. The constitutional authority of the Legislature to grant such powers to the county school boards is no longer an open question. Henderson et al. v. Miller et al., Tex.Civ.App., 286 S.W. 501, writ refused; Ivey et al. v. Keeling et al., Tex.Civ.App., 15 S.W.2d 1097, appeal dismissed 281 U.S. 699, 50 S.Ct. 352, 74 L.Ed. 1126; Prosper Independent School Dist. et al. v. County School Trustees, Tex.Com.App., 58 S.W.2d 5; County School Board of Angelina County et al. v. Homer Common School District et al., Tex.Civ.App., 291 S.W. 268; Young County Board of School Trustees v. Bailey et al., Tex.Civ.App., 61 S.W.2d 130, writ refused. So far as the alleged effort of the appellants to circumvent the will of the voters in the common school districts is concerned, article 2922c provides that it is only necessary for the districts to be annexed to consent to annexation by majority vote therein when the proposed rural high school district contains more than seven elementary districts, which was not the case herein. Where, as here, the proposed district does not contain more than seven elementary districts, the will of the majority in the individual districts is not essential to annexation. The issue is governed entirely by the majority will of the entire proposed district as expressed by the voters at an election called for such purpose. Nor is it necessary under article 2922c that a majority of the school trustees in such elementary districts consent to the formation of the proposed district. Cox et al. v. Beard et al., Tex.Civ.App., 87 S.W.2d 882, writ refused; Countz et al. v. Mitchell et al., 120 Tex. 324, 38 S.W.2d 770; Florey Common School District No. 5 of Andrews County et al. v. Board of School Trustees of Andrews County, Tex.Civ.App., 126 S. W.2d 536, writ refused; Trinity Independent School District v. District Trustees, Dist. 24, Trinity County et al., Tex.Civ. App., 135 S.W.2d 1021, writ refused. It has also been held that where the first resolution of the county school board annexing common school districts to an independent district was not in conformity with articles 2922a and 2922c such fact did not prevent the board from passing

subsequent resolutions conforming to such laws. Henderson et al. v. Miller et al., supra.

"There was no finding or evidence of any fraud, lack of good faith or abuse of discretion upon the part of the County School Board in its action in issuing the annexing orders in controversy, unless it could be said that the action of such board and the other appellants in securing the intervention of the Stoneback and Center Plains districts in the quo warranto suit and in the preparation of the orders before judgments were rendered in the prior causes constituted such misconduct. To this theory of the appellees urging that such action constituted fraud and abuse of discretion we are unable to subscribe. We fail to see any wrongful conduct upon the part of the appellants in securing the intervention of parties in a law suit whose rights may be affected by the judgment to be rendered therein. Nor do we think there was any vice in the action of the attorneys in the prior suits in preparing in advance of the judgments therein such orders as reflected the desires of the litigants involved in such controversy. The judgment of the quo warranto proceeding declared void all orders theretofore issued by the County School Board with reference to annexing or grouping the districts, and this judgment was binding upon all the parties affected thereby. Kuhn et al. v. City of Yoakum et al., Tex.Com.App., 6 S.W.2d 91. But such judgment did not have the effect of depriving the County Board of the right to thereafter proceed to create a new rural high school district under the authority of the above articles of the statute. The fact that such new action might circumvent the will of the majority of the voters in some of the districts involved does not, in our opinion, under the law as it now exists, indicate fraud, bad faith or an abuse of discretion upon the part of the County Board of School Trustees. The Legislature saw fit to give such board the authority to circumvent the will of the majority in some of the districts when such Legislature provided in article 2922c that rural high schools containing more than 100 square miles may be formed as indicated in article 2922a 'upon a vote of a majority of the qualified electors in the said proposed rural high school district voting at an election called for such purpose.' It is apparent that this provision warrants the creation of such

a district if the election in connection therewith results in a majority vote for annexation over the proposed district at large regardless of the outcome of the election in some of the districts involved. Trinity Independent Dist. v. District Trustees, Dist. 24, Trinity County et al., supra. This rule may seem unfair to the smaller common school districts which are situated near or adjacent to an independent district, as is contended most vigorously by the appellees herein with a great deal of logic and zeal, but such rule seems to be the law, and therefore, if the appellees obtain any relief from the injustice asserted by them, such relief must necessarily come from the Legislature rather than from the courts."

■■■ We recognize that the district court had jurisdiction of the subject matter of this case. The school trustees and parties interested had a right to invoke the supervisory powers of the district court for relief against the orders entered by the county board of trustees. However, as heretofore stated, the Legislature has vested the authority in the county board of trustees under certain conditions to group common school districts for the purpose of creating a rural high school. Before the court would be authorized in setting aside and annulling an order of a county board of trustees grouping common school districts with the high school to form a rural high school a clear case of abuse of discretion on the part of the board must be shown. In this case the court predicated its action in setting aside and holding void the orders of the county board upon the jury findings of abuse of discretion, fraud and arbitrary action. We believe that the evidence is insufficient under the law to support such findings. It is true that the order entered as of February 16th was void, but we believe that the order entered on June 11, 1945, is valid and that the county board of trustees had the right and the authority under the law to enter such order. Although not required by law, the board gave the parties interested ample notice of the meeting to be held on June 11th, and they were given an opportunity to express and they did express their views upon the question involved. From the testimony of the board members it is disclosed that they thought it would be for the best interest of all the school children involved that the rural high school be established, and that within

a period of years the children would have the advantage of a better high schol than the one they now have. Although the district court has in a proper case supervisory power over the orders entered by the county board of trustees, the discretion given the county school board in the establishment of schools cannot be superceded by the judgment of said court or of this court. From Schulz et al. v. Davis, County Judge, et al., Tex.Civ.App., 207 S.W. 634, 635, we quote:

"As we understand the statute enacted by the 34th Legislature, c. 36, p. 68, par. 4a (Vernon's Ann.Civ.St.Supp.1918, art. 2749d), the district court is given the supervisory control of the actions of the board of county school trustees in creating, changing, and modifying school districts. This supervisory control will be exercised by the courts to prevent or correct the action of the county school trustees only when the county school trustees have exercised their power of districting in a harsh and arbitrary manner that amounts to an abuse of discretion. McLaughlin v. Smith, 105 Tex. [330], 333, 148 S.W. 288; McLaughlin v. Smith, Tex.Civ.App., 140 S.W. 248; Minear v. McVea, Tex.Civ. App., 185 S.W. [1048], 1049; Collin County School Trustees v. Stiff, Tex.Civ.App. 190 S.W. 216; Price v. School Trustees, Tex.Civ.App., 192 S.W. 1140."

Also, as said by Judge Conner in Young County Board of School Trustees v. Bailey et al., Tex.Civ.App., 61 S.W.2d 130, 131:

"Under such circumstances, it seems clear to us that the verdict of a jury in a trial court, even when approved by the trial judge, ought not to be substituted for the discretion and untainted determination of the officers and state agencies upon which the lawmaking power has especially imposed the prescribed duties in educational matters for the purpose of promoting the educational policies of the state and the interests of its scholastic population."

In Grayson County et al. v. Harrell et al., Tex.Civ.App., 202 S.W. 160, 163, it is said:

"* * * but it has been held that 'the abuse of discretion, to justify interference with the exercise of discretionary power, implies not merely error of judgment, but perversity of will, passion, prejudice, partiality, or moral delinquency.'"

From Burger, etc., v. Freedom Tp., 126 Pa.Super. 128, 190 A. 387, 388, we quote:

"An abuse of discretion is not merely an error of judgment, but if in reaching a conclusion the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable * * * discretion is abused." (See cases therein cited.)

The passing of the order grouping the districts in the face of the opposition of the patrons in the common school districts might have been an error in judgment, but in doing so the board did not override or misapply the law. On the other hand, the board complied with the law in every respect. The evidence was insufficient to show that such order was manifestly unreasonable.

We have reviewed many authorities touching upon this question and have given this case our most thoughtful consideration and have reached the conclusion that the evidence is insufficient to support that portion of the trial court's judgment that sets aside the order of the board of June 11th. We have considered and overruled all other points raised by the appellant, but in view of the disposition we make of the case, we do not deem it necessary to discuss them.

The case has been fully developed in the court below and nothing would be gained by remanding it for another trial. Therefore, that part of the judgment of the trial court seting aside the order of February 16, 1945, is affirmed; that part of the judgment cancelling and annulling the order of June 11, 1945, is reversed and here rendered in favor of the defendants, the County Board of School Trustees and the County Superintendent.

Affirmed in part; reversed and rendered in part.