Robert LANDON, Appellant,

v.

JEAN–PAUL BUDINGER,
INC., Appellee.

No. 3–86–018–CV.

Court of Appeals of Texas,
Austin.

Feb. 11, 1987.

---

William T. Hall, William T. Hall & Associates, Austin, for appellant.

Claude E. Ducloux, Robinson, Felts, Starnes, Angenend & Mashburn, Austin, for appellee.

Before POWERS, GAMMAGE and ABOUSSIE, JJ.

POWERS, Justice.

Following a jury trial, Robert Landon recovered judgment against Jean-Paul Budinger, Inc. in causes of action arising out of a construction contract, in the principal amount of $3,973.37 together with $4,500.00 in attorney's fees. In a single point of error, Landon contends the trial

court erred in directing a remittitur of $1,500.00 from the amount of $6,000.00 which the jury found was his reasonable and necessary attorney's fee.[1] We will affirm the judgment of the trial court.

1. The parties on appeal join issue on the single point of error raised by Landon—whether the trial court abused its discretion in "ordering a *remittitur* of a portion of the attorneys fees awarded by the jury." The simplicity of their respective contentions and arguments obscures a first-class procedural and substantive snarl revealed by the record on appeal, and neither party to the appeal mentions it at all. We wish here to state, however, that we *assume* with the parties that the judgment below, properly construed, directs a remittitur of attorney's fees in conformance with the procedure specified therefor in Tex.R.Civ.P. 315; and, conversely, that it does not represent a case where the trial judge has violated Rule 301 by impermissibly substituting his own finding as to attorney's fees without a motion in that regard for judgment *non obstante veredicto*. In reality, the judgment we review does not rest upon compliance with either rule, but the face of the record does not in our view demonstrate a want of jurisdiction in the trial court to render the judgment it did, a matter discussed below although this too is not raised by the parties.

The jury found in answer to special issue 8 that a reasonable and necessary attorney's fee for the work of Landon's attorney, in his preparation and trial of the suit, was $6,000.00. After the jury returned its verdict, Budinger moved on December 6, 1985 that the trial court disregard the jury's answer to the special issue and deny altogether Landon's claim for attorney's fees. Sustaining the motion, the trial court on December 19, 1985 rendered judgment on the verdict for Landon, with respect to the principal sum of damages found by the jury, but denied his claim for attorney's fees.

On January 6, 1986, Landon moved for a new trial limited to the issue of his claim for attorney's fees. This motion was overruled by operation of law on March 4, 1986. Tex.R.Civ.P. 329b(c). Landon filed on March 12, 1986 an amended motion wherein he requested "that the Court reform the judgment to conform to the jury's findings to the extent of [Landon's] entitlement to attorney's fees." Immediately, the trial court on March 14, 1986 purported to "reform" its previous judgment by awarding Landon the full amount of $6,000.00 found by the jury, in addition to the principal sum also found by the jury as his damages.

Thereafter, Budinger moved the trial court on March 20, 1985 to again "reform" its latest final judgment or set aside the award of attorney's fees made therein, contending among other things "that the $6,000.00 in attorney's fees is unreasonable in relation to the actual [sic] damages awarded by the" jury. Budinger prayed that the court either "order a new trial on the

## THE AWARD OF ATTORNEY'S FEES

Landon prayed for attorney's fees in a reasonable amount based upon a contract provision entitling him to such fees or based upon the provisions of former Tex. issue of attorney's fees or order a remittitur of such part of the award of attorney's fees which the Court feels is excessive." Sustaining Budinger's request for a "remittitur" by "reforming" the earlier judgment, the trial court on April 30, 1986 rendered the final judgment we now review in an appeal taken by Landon. In its judgment, the trial court recited

that the finding of attorney's fees by the jury in the amount of $6,000.00 is hereby remitted by the Court in the amount of $1,500.00 making the total award of attorney's fees due and payable by [Budinger] ... the sum of $4,500.00.

There arises a question of whether the trial court had lost jurisdiction before it rendered the final judgment of March 14, 1986, and, of course, that of March 20, 1985. Rule 329b(e) provides:

If a motion for new trial is timely filed by any party, the trial court, regardless of whether an appeal has been perfected, has plenary power to grant a new trial or to vacate, modify, correct, or reform the judgment until thirty days after all such timely filed motions are overruled, either by a written and signed order or by operation of law, whichever occurs first.

Under subsection (c) of the rule, an original or amended motion for new trial or a motion to modify, correct or reform a judgment is overruled by operation of law 75 days after the judgment was signed, unless earlier acted upon by written order. Therefore, Landon's motion for new trial filed January 6, 1986 was timely filed. It was overruled by operation of law on March 4, 1986 following which, on March 12, 1986, Landon filed his second motion. The trial court, however, still possessed plenary power over its judgment because 30 days had not expired from the date the original motion was overruled by operation of law, as provided in subsection (e) of Rule 329b. Similarly, the trial court continued to have power over its judgment with respect to Budinger's motion of March 20, 1985, which the court sustained by yet another final judgment rendered on April 30, 1986.

In summary, the *first* post-judgment motion, Landon's motion for a new trial, was filed January 8, 1986. It was therefore timely because it was filed within 30 days of the original final judgment signed December 19, 1985. The trial court's action in reforming the judgment was taken within 30 days after the January 8 motion was overruled by operation of law; thus, the action was within the courts plenary power as provided by Rule 329b(c). We therefore conclude that the record on appeal does not demonstrate a want of jurisdiction in this court.

Rev.Civ.Stat.Ann. art. 2226 (Supp.1986) (now Tex.Civ.Prac. & Rem.Code Ann. § 38.-001 et seq. (1986)). As mentioned above the jury determined that $6,000.00 was a reasonable amount for necessary attorney's fees incurred by Landon. The evidence given on the question of attorney's fees is that Landon's attorney required 71 hours to complete the trial of the case, performing the familiar aspects of any suit of this nature (which were specified); and, that $100–$150 was a reasonable hourly charge for attorneys for the kind of work involved, in view of the basic nature of the case and its various particular aspects. Thus, the $6,000.00 finding is unquestionably within the evidence heard by the jury.

■■■ When damages are not liquidated, it is axiomatic that their ascertainment is a question of fact for the jury. But the jury's determination, even when within the evidence, remains subject to the trial court's control; for example, it may grant a new trial, conditioned on a remittitur, when the jury's determination is "manifestly too small or too large." Tex.R.Civ.P. 328 (West 1986); *Flanigan v. Carswell,* 159 Tex. 598, 324 S.W.2d 835 (1959). When attorney's fees are recoverable as an item of damages, in a jury case, the trial court must determine independently what are reasonable and necessary attorney's fees in the case, in view of the whole record, the legal rules applicable to the award of such fees, and the trial judge's experience as a lawyer and judge. *Southland Life Insurance Co. v. Norton,* 5 S.W.2d 767 (Tex. Comm.App.1928, holding approved); *Argonaut Insurance Company v. ABC Steel Products Co., Inc.,* 582 S.W.2d 883 (Tex. Civ.App.1979, writ ref'd n.r.e.) and decisions cited therein. If the jury's finding as to attorney's fees exceeds the amount settled upon by the trial court as being reasonable and necessary the court may award the lower sum. *Id.* The action of the trial court, when directing a remittitur

to accomplish that result, may be reversed on appeal only if the appellate court concludes that the trial court "abused its discretion" in directing the remittitur. *Flanigan v. Carswell, supra.* For example, under a statute which provided that the trial court may award "reasonable and necessary attorney's fees as may seem equitable and just," the Supreme Court of Texas has stated that

> the grant or denial [altogether] of attorney's fees ... lies within the discretion of the trial court, and its judgment will not be reversed on appeal absent a clear showing that it abused that discretion.

*Oake v. Collin County,* 692 S.W.2d 454, 455 (Tex.1985) (parenthetical statement added). In the present appeal, we must therefore determine whether the trial court "abused its discretion" in directing a remittitur in a sum $1,500.00 less than the $6,000.00 found by the jury to be a reasonable and necessary attorney's fee. Landon contends the trial court "abused its discretion;" Budinger contends the opposite. We must, therefore, first assign meaning to the "abuse of discretion" standard that controls our decision on appeal.[2]

## THE "ABUSE OF DISCRETION" STANDARD FOR APPELLATE REVIEW

It has been said that "abuse of discretion" is a concept "not easily defined." *Bennett v. Northcutt,* 544 S.W.2d 703, 706 (Tex.Civ.App.1976, no writ). The problem seems to be that judicial attempts to define the concept almost routinely take the form of merely substituting other terms that are equally unrefined, variable, subjective, and conclusory. *Landry v. Traveler's Insurance Co.,* 458 S.W.2d 649, 651 (Tex.1970) ("arbitrary" or "unreasonable"); *Johnson v. City of Richardson,* 206 S.W.2d 98, 100 (Tex.Civ.App.1947, no writ) ("more than an error in judgment"); *County School Trustees of Callahan County v. District Trustees,* 192 S.W.2d 891, 898 (Tex.Civ.App.1946,

---

**2.** The "abuse of discretion" standard of appellate review applies on appeal from a wide variety of trial-court determinations in both civil and criminal cases. In civil appeals, for example, it is the standard for judging trial-court rulings in such matters as temporary injunctions, receivership proceedings, pleadings, continuances, jury misconduct, argument of counsel, special-issue submission, setting aside verdicts, taxing cost, modification of judgments, setting aside default judgments, and joinder of actions.

writ ref'd n.r.e.) ("harsh and arbitrary"); *Brazos River C. & Reclamation Dist. v. Harmon,* 178 S.W.2d 281, 292–93 (Tex.Civ. App.1944, writ ref'd w.o.m) ("mere mistake" of judgment insufficient and it must be coupled with "the additional elements of arbitrariness, capriciousness, partiality, etc."); *Bobbitt v. Gordon,* 108 S.W.2d 234, 238 (Tex.Civ.App.1937, no writ) (not merely an "error of judgment, but perversity of will, passion, prejudice, partiality, or moral delinquency"). These substitute expressions are really no more illuminating than the original expression if either is to serve as a basis for appellate decision in a particular case *standing alone.* Nevertheless, the reported decisions reveal that appellate courts too often attempt to do just that— applying to "the record as a whole" the original or substitute expression to divine ultimately whether the trial court's action in the particular case transgressed a standard of "sound judicial discretion." [3]

This form of appellate review and decision has not been helpful to the parties who must frame their appellate contentions in reference to the appellate courts' earlier decisions about what constitutes an "abuse of discretion." It does not aid the appellate courts who struggle for consistency while applying a standard so amorphous that it means everything and nothing at the same time; nor the trial courts who must guide their conduct in future cases by what the appellate courts have said and decided in applying a standard that lacks any discernable content standing alone. The "abuse of discretion" standard represents nevertheless an essential and fundamental principle in the complex and delicate relationship between trial and appellate courts. It is susceptible of use in a way that is consistent with its importance, and to that we now turn.

In common usage, the word "discretion" signifies a power to choose among alternatives within legal bounds. This power is routinely given to government officials be-

cause government cannot be conducted without the exercise by someone of the power to choose with *authority,* that is to say, the power to *determine,* according to the official's best judgment, what alternative is best in the circumstances. The "discretion" contemplated by the "abuse of discretion" standard is similar in that it signifies the power legally committed to a trial court to choose among alternatives: whether to issue a temporary injunction, whether to set aside a default judgment, whether to sustain a pleader's special exception, and so forth. The standard is a *review-limiting* device that, within limits, immunizes from appellate revision the choice made by the trial court in a particular case. In a similar way, an administrative agency's choice in a contested case is protected from reversal on judicial review by the "abuse of discretion" standard set forth in Tex.Rev.Civ. Stat.Ann. art. 6252–13a, § 19(e)(6) (Supp. 1986), where it is coupled with the analogous expressions "arbitrary or capricious" and "clearly unwarranted exercise of discretion." Needless to say, that a matter *is* committed to a trial judge's discretion is *never a reason for* his deciding to rule one way as opposed to another.

It is fundamental, however, that neither a trial court nor an administrator may exercise authoritatively a power that is *not* vested in him by law; nor may he exercise a vested power in a manner that is contrary to law or reason. This adherence to legal rules, principles, and criteria is illustrated by the following statement of the Supreme Court of Texas in reference to the discretion committed to a trial court to set aside or not a default judgment, pursuant to an equitable motion for new trial:

> Naturally appellate courts will differ on the delicate question of whether trial courts have abused their discretion. While trial courts have some measure of discretion in the matter, as, in truth, they have in all cases governed by equitable

---

**3.** When applied in this manner, "abuse of discretion" has been described as

  the noise made by an appellate court while delivering a figurative blow to the trial judge's solar plexus.... The term has no meaning or

idea content that I have ever been able to discern. It is just a way of recording the delivery of a punch to the judicial midriff. Rosenberg, *Appellate Review of Trial Court Discretion,* 79 F.R.D. 173, 180 (1975).

principles, it is not an unbridled discretion to decide cases as they might deem proper, without reference to any guiding rule or principle.

*Craddock v. Sunshine Bus Lines*, 134 Tex. 388, 133 S.W.2d 124, 126 (Com.App.1939); *see also, Missouri-Kansas-Texas Railroad Co. v. Bush*, 310 S.W.2d 404 (Tex.Civ.App. 1958, writ ref'd n.r.e.), *cert. denied* 358 U.S. 827, 79 S.Ct. 45, 3 L.Ed.2d 67 (1958). The "judicial discretion" contemplated in the standard is *not* "judicial impressionism," but rather a discretion exercised *in accordance with legal rules, principles, and criteria*. *Brown v. Allen*, 344 U.S. 443, 496, 73 S.Ct. 437, 440, 97 L.Ed. 469 (1953). Stated another way, "the trial court abuses its discretion when the law is *misapplied* to established facts...." *State v. Southwestern Bell Tel. Co.*, 526 S.W.2d 526, 528 (Tex.1975) (emphasis added).

*If* the trial judge exercises a power of choice given him by law, and does so in a way that is lawful in every respect, he has of course committed no legal error; and, it may not in such a case be concluded that he "abused his discretion." His choice in the particular case is immune from appellate revision, even though the appellate court might not have made the same choice in the same circumstances. *Jones v. Strayhorn*, 159 Tex. 421, 321 S.W.2d 290, 295 (1959). Fundamentally, however, the trial court's choice is immune from appellate revision because it is untainted by legal error.

■ But the "abuse of discretion" standard *also* protects from appellate revision a limited range of trial-court choices even when they *are* marred by legal error. That is to say, the standard protects to a limited degree the trial court's "right" to be wrong without suffering appellate revision. If the legal error committed by the trial court is not "prejudicial" or if it does not result in "injury," the trial court's choice does not amount to an "abuse of discretion," which is to say it remains immune from appellate revision notwithstanding the legal error. *Schroeder v. Brandon*, 141 Tex. 319, 172 S.W.2d 488 (1943); *Lipscomb v. Perry*, 100 Tex. 122, 96 S.W. 1069 (1906). On the other hand, the legal error is of course prejudicial or injurious where it probably caused an improper judgment in the case or prevented the appellant from making a proper presentation on appeal. Tex.R. App.P. 81 (West 1986). This would include legal errors affecting the fairness of the proceeding as a whole. *See, e.g., Dillard v. Berryman*, 683 S.W.2d 13 (Tex.App.1984, no writ); *see also Johnson v. United States*, 398 A.2d 354, 366–67 (D.C.Ct.App. 1979); Pope, *Jury Misconduct and Harm*, 12 Baylor L.Rev. 355, 361 (1960).

■ The immunity from appellate revision, implicit in the "abuse of discretion" standard, is designed to secure certain jurisprudential advantages as these are described in Rosenberg, *Judicial Discretion of the Trial Court, Viewed From Above*, 22 Syracuse L.Rev. 635, 660–65 (1971).[4] Certain consequences flow from this impor-

---

**4.** There are reasons *why* trial courts are given "discretion" by statute, rule, or common law decision. There are five of them, the first two being the most important, set out in the Rosenberg article:

1. The trial judge occupies in many respects a superior position from which to ascertain and evaluate with greater accuracy *all* the matters and considerations critical to a decision on particular disputes arising at trial. He may therefore give a better judgment than could an appellate court, as to these disputes, because of the inherent limitations of an appellate record and its imperfect presentation of all the relevant aspects.

2. Many kinds of trial-court disputes are simply not governable by a hard and fast rule of any kind so that a trial court must of necessity have the flexibility necessary to shape an *ad hoc* determination sufficient for the circumstances—for example, disputes about the scope of cross examination, claims of surprise, the order in which witnesses shall testify, and other matters of trial administration.

3. The appellate-review process would break down if it be extended to include every trial-court action even if it did not affect the outcome of the case or the fairness with which it was conducted.

4. Trial judges would be unable to function effectively if any and all of their actions, taken in the course of a trial, were subject to appellate revision and a reversal of their judgments.

5. To include all trial-court actions within the scope of appellate revision would delay intolerably the conclusion of litigation.

tant foundation. *If* an appellate court exercises its power of revision because it concludes the trial court "abused" the discretion committed to it by law, it is not only fair but *essential* that the reviewing court point out specifically the basis of its conclusion by designating the legal rule, principle, or criterion it relies upon for its conclusion that the trial court committed a legal error that justified reversal. Or if the appellate court concludes there was no "abuse" of discretion, it should state the basis for that conclusion—for example, that there was no misapplication of the law by the trial court; or, if there was legal error, it was not viewed as prejudicial or injurious for specified reasons. It may be that the reasons for the standard do not apply in a particular case. *See e.g. Noonan v. Cunard Steamship Co.*, 375 F.2d 69 (2d Cir.1967). Unless the appellate court spells out the basis for its conclusion, there can be no consistency from case to case, at either the trial or appellate levels, and the parties cannot intelligently formulate their contentions in any further appeal. We shall therefore attempt in the following paragraphs to supply this essential aspect of appellate review.

## APPLYING THE STANDARD IN THE PRESENT APPEAL

The general outline of "abuse of discretion" given above may be applied in the present case only by a consideration of its various defining elements, as was done in *Johnson v. United States, supra.*[5] We shall consider these separate elements in the numbered paragraphs that follow, to arrive at the proper decision relative to two ultimate queries: (1) whether the trial court's exercise of discretion was legally erroneous; and (2) if it was, whether the impact of the error on the case requires reversal. An analysis of the appellate record in this manner will, in our view, be more practical, logical, illuminating, and consistent with the important purposes the "abuse of discretion" standard is meant to serve.

■ 1. *Was the determination complained of on appeal a matter committed by law to the trial court's discretion?* We may look to statutory, procedural, or common law (including equity in a proper case) to determine whether the power of choice was legally vested in the trial court by any of these sources of law.[6] We conclude the law unquestionably committed to the trial court the power to make a determination that the amount of attorney's fees found by the jury was in excess of just compensation for attorney's fees, even though within the evidence. The power is expressly given in Tex.R.Civ.P. 328, where trial courts are authorized to grant new trials or order remittiturs "when the damages are manifestly too small or too large." That the power existed in the trial court is also made abundantly clear by the Supreme Court's decision in *Flanigan v. Carswell, supra,* as to damages generally, and by the decision in *Southland Life Insurance Co. v. Norton, supra,* with particular regard to attorney's fees. There are a number of court of appeals decisions to the same effect, with regard to attorney's fees. *See Argonaut Insurance Company v. ABC Steel Products Co., Inc., supra,* where many of these are cited. Moreover, this is not a case where the trial judge's discretion in a class

---

5. We do not, of course, include within our consideration the power of a trial judge to make choices that are *not* subject to appellate review and revision. For example, trial judges may in their discretion grant *or* deny a motion for new trial under Tex.R.Civ.P. 328; however, only their decision to *deny* the motion is reviewable on appeal under the "abuse of discretion" standard. The trial court's decision to *grant* a timely motion for new trial, while the court possesses jurisdiction, is not reviewable on appeal even though it results from an exercise of trial-court discretion. *Cummins v. Paisan Construction Co.*, 682 S.W.2d 235 (Tex.1984).

6. *See e.g., Landry v. Travelers Insurance Company*, 458 S.W.2d 649 (Tex.1970) where the trial court's power to exclude evidence for remoteness derived from the common law; *Jones v. Strayhorn*, 159 Tex. 421, 321 S.W.2d 290 (1959) where a rule of procedure committed to the trial court's discretion the matter of taxing costs and fees associated with a lawsuit; and, *Penix v. First Nat. Bank of Paris*, 260 S.W.2d 63 (Tex.Civ. App.1953, writ ref'd) where the trial court was vested by statute with the power to remove trustees for cause.

of trial-court rulings has been withdrawn from him by a rule of law that controls particular cases within the class. *See e.g., Government Services Ins. Underwriters v. Jones,* 368 S.W.2d 560 (Tex.1963) (granting of continuance made mandatory by statute on application of attorney who is member of Legislature and attending its sessions). We conclude then that the trial court did not, in ordering the remittitur, purport to exercise a power not given by law.

2. *Did the trial court, in making the determination complained of on appeal, recognize and purport to act in an exercise of the discretion committed to it by law?* In some instances, it may be contended that the trial court abused its discretion by declining or failing to exercise a discretion committed to it by law in circumstances where the court was required to do so. *See e.g., Womack v. Berry,* 156 Tex. 44, 291 S.W.2d 677, 680 (1956) ("It is well settled that mandamus lies to ... require the exercise of discretion.") That matter does not here arise, however, because the trial court purported to *exercise* its discretion by ordering the remittitur requested by Budinger.

3. *Does the appellate record reveal sufficient facts upon which the trial court could act rationally in an exercise of its discretion?* When discretion is committed by law to the trial court, the law also contemplates by necessary implication that such discretion will be exercised in a rational manner. This aspect of rationality has been referred to in various appellate decisions, some of which are cited above, by such synonyms as "arbitrary," "unreasonable," and "capricious." *Whether* the trial court acted rationally or irrationally, in a legal sense, may only be appraised in reference to the factual context in which the court acted in making its choice between possible alternative rulings. In some cases, the factual context might of necessity require the compilation of an evidentiary record in a special inquiry, as in the case of jury misconduct. Tex.R.Civ.P. 327. In others, it is manifest that no evidentiary record at all is required, as when a trial judge sustains or overrules a special exception to an opponent's pleading. In

such cases the pleadings themselves constitute the basis upon which the trial judge purported to exercise his discretion and the context in which his actions are to be judged on appeal. *Southwest Stone Co. v. Railroad Commission,* 173 S.W.2d 325 (Tex.Civ.App.1943, writ ref'd w.o.m.). In the present case, the factual context is chiefly that made in the trial of the case on the merits, including of course that part of the evidence which bore upon the question of reasonable attorney's fees, but it also included the documents in the case and the trial judge's observation of the trial, given the elements to be considered by him in appraising the reasonableness and necessity of attorney's fees and whether the amount awarded by the jury was manifestly too large.

█ If a trial court purports to exercise a discretionary power committed to it by law, when the court lacks a sufficient factual basis upon which to make a rational decision either way, it is said that the court abuses its discretion. *Dallas General Drivers v. Wamix, Inc. of Dallas,* 156 Tex. 408, 295 S.W.2d 873 (1956); *Powers v. Temple Trust Co.,* 124 Tex. 440, 78 S.W.2d 951 (Com.App.1935); *Haden Employees' Ass'n v. Lovett,* 122 S.W.2d 230 (Tex.Civ.App. 1938, writ ref'd). *See also, Weisel Enterprises, Inc. v. Curry,* 718 S.W.2d 56 (Tex. 1986). It is therefore essential that the appellate court appraise whether a rational decision *could* have been made by the trial court in light of the information available to it.

In the present case, Budinger moved after trial for a remittitur of attorney's fees, contending the amount awarded by the jury was manifestly too large because it was unreasonable in relation to the principal sum awarded by the jury as damages. No evidence was taken in connection with Budinger's motion. We may therefore presume that the trial judge determined Budinger's motion on the ground asserted therein and based upon the record compiled in the proceedings theretofore, as well as the trial judge's personal observations and appraisal of the trial.

We are unable to say from the record before us that the trial court could not rationally have made its order in light of the foregoing matters. From these, we believe he could have made a rational decision on Budinger's motion after considering all the elements which go to make up a "reasonable and necessary" attorney's fee.

4. *Did the trial court exercise erroneously the discretion committed to it by law?* We arrive then at one of the two ultimate inquiries necessary to be answered before we may determine that the trial court "abused" its "discretion" in directing the remittitur—did the trial court err with regard to any applicable legal rule, principle, or criterion?

First, of course, we must consider whether the trial court erred in making a choice that was not within the range of choices permitted by law. The trial court implicitly determined that the amount of attorney's fees awarded by the jury was manifestly too large. As discussed previously, this determination was within the legal alternatives available to the trial court, even though the sum found by the jury was within the evidence. *Flanigan v. Carswell, supra.*[7]

We next inquire whether the trial court arrived at its determination in violation of any general rules of law. Such errors may occur in reference to the requirements of statutory, procedural, or common law rules. *See e.g., Landry v. Travelers Insurance Company,* 458 S.W.2d 649 (Tex. 1970) (trial court's discretion in evaluating remoteness of a party's previous criminal conviction, offered for impeachment, may be exercised erroneously *as a matter of law* when conviction so recent or so remote as to be admissible or not as a matter of law); *Craddock v. Sunshine Bus Lines, supra* (discretion of the trial court in setting aside default judgments must be exercised under the common-law rules laid down by Supreme Court of Texas for such cases); *Robertson v. Robertson,* 382 S.W.2d 945 (Tex.Civ.App.1964, writ ref'd n.r.e.) (trial court abuses its discretion when it denies change-of-venue application in face of uncontradicted evidence that establishes facts alleged in sufficient application); *Boucher v. Wissman,* 206 S.W.2d 101 (Tex.Civ.App.1947, writ ref'd n.r.e.) (temporary injunction, while in trial court's discretion to issue, may not be issued on pleadings inadequate under rules of procedure); *Crouch v. Crouch,* 164 S.W.2d 35 (Tex.Civ.App.1942, no writ) (trial court's discretion to grant an application for temporary injunction must be exercised according to requirements of rules of procedure that apply to such proceedings). It is not contended in the present case that the trial court, in ordering the remittitur, committed legal error by violating any such rule of law applicable to the case.

Finally, we inquire whether the trial court erred, even though it complied with the law in all other respects, because its determination was legally unreasonable in the factual-legal context in which it was made. This might have occurred because the trial court failed to consider a factor shown in the evidence that was legally

7. In *Flanigan v. Carswell, supra,* the Supreme Court of Texas specifically rejected the idea that remittiturs are conditional upon a determination (based upon sufficient evidence) that the jury was improperly motivated in awarding the sum they did. 324 S.W.2d at 841. Instead, the Court stated that both the trial court and the court of appeals operate under the same standard of *reasonable compensation.* With specific reference to the reviewing court, the Supreme Court stated:

> [W]here the trial judge has ordered a party to remit a portion of the jury verdict as a condition for overruling a motion for new trial, the Court of ... Appeals, in passing upon such action ... should allow the trial court's action to stand unless it be of the opinion that the

remittitur ordered by the trial court, when considered in the light of the whole record, would render the order of remittitur manifestly unjust. If, in the light of all the facts and circumstances, the trial court's order of remittitur was manifestly unjust, the Court of ... Appeals should restore the remittitur or such part thereof as the Court of Civil Appeals deems necessary to prevent the order from being manifestly unjust and render such judgment as the trial court should have rendered. 324 S.W.2d at 840–41. This form of appellate evaluation was explicitly prescribed as the manner in which "the reviewing court must determine the order's propriety by deciding whether the trial judge abused his discretion in making the order" of remittitur. 324 S.W.2d at 840.

relevant to *any* determination of what constituted a reasonable and necessary attorney's fee; because the court's determination rested upon a factor that it was forbidden by law to consider in arriving at an estimate of a reasonable and necessary attorney's fee, when the appellate court believes the trial court might not have made the same estimate absent any consideration of the forbidden factor; or, because the trial court, in considering a legally relevant factor, exaggerated it to an unreasonable degree. *See* Friendly, *Indiscretion About Discretion*, 31 Emory L.J. 747, 769–70 (1982).

The relevant factors in the present case are those that legally may be considered in arriving at an estimate of reasonable attorney's fees: the quality of the work done by Landon's attorney; the time and labor required of the attorney; the nature and complexities of the case; the amount of money or the value of any property or other interest involved; the extent and nature of the attorney's responsibilities; whether the attorney lost other employment by reason of the case; the benefits accruing to Landon from the attorney's work; the contingency or certainty of the attorney's compensation; or whether the attorney's employment was casual or for an established or constant client. *See e.g., Morgan v. Morgan,* 657 S.W.2d 484, 491–92 (Tex.App.1983, writ dism'd). Another legally relevant factor is the reasonableness of the relationship between the amount awarded by the jury as principal damages and the amount awarded as attorney's fees. *Elizabeth Perkins, Inc. v. Morgan Exp., Inc.,* 554 S.W.2d 216 (Tex.Civ.App. 1977, no writ). All of the elements must be orchestrated in arriving at the estimate. No single element is controlling without regard to the others.

Concerning this subsidiary inquiry, we encounter a serious impediment to any consideration of the reasonableness of the trial court's determination. The appellate record *does not reveal* what, if anything, the trial court considered in arriving at its determination. It is silent altogether as to the trial court's reasoning in ordering the remittitur.

The better practice would have been for the trial court to state in the record its reasoning so that the parties particularly, but also the appellate court, might intelligently assess whether the trial court erred on the grounds we here consider. *See* 4 McDonald's, Texas Civil Practice § 16.05, at 7–8, fn. 24 (Even when trial courts are not required to file findings of fact and conclusions of law they often do so "[a]s a matter of practice" in regard to their determinations on interlocutory orders from which an appeal will lie, for that is the "better course.") The value of such findings of fact and conclusions of law, even when they are not required by law, is dramatically illustrated in *Fancher v. Caldwell,* 159 Tex. 8, 314 S.W.2d 820 (1958), where such findings and conclusions were not legally required, but because of them the Supreme Court was able to ascertain that the trial court had abused its discretion by rendering judgment *non obstante veredicto* on an erroneous legal theory.

In some cases, of course, the trial court may be under a legal *duty* to state its reasoning in arriving at a determination that lies within its discretion, as in the case of its determining to issue a temporary injunction. Tex.R.Civ.P. 683; *see also, Lewkowicz v. El Paso Apparel Co.,* 625 S.W.2d 301 (Tex.1981) (recognizing findings of fact and conclusions of law in motion to set aside agreed judgment); *Dallas Heating Co., Inc. v. Pardee,* 561 S.W.2d 16 (Tex.Civ.App.1977, writ ref'd n.r.e.) (motion for new trial following default judgment); *Brungs v. Consolidated Plan Service, Inc.,* 529 S.W.2d 79 (Tex.Civ.App.1975, writ ref'd n.r.e.) (findings of fact and conclusions of law required in determination of motion for new trial based on jury misconduct). In other cases, it is manifest that the court need *not* file findings of fact or conclusions of law, or otherwise state its reasoning, in support of its determination in a matter committed to its discretion. For example, these are not required to support the trial court's ruling on special

exceptions to an adversary's pleadings because the pleadings themselves are the basis of the determination. *Southwest Stone Co. v. Railroad Commission, supra.*

In directing a remittitur in the present case, the trial court was under no obligation to state the reasoning upon which its determination was based. *Flanigan v. Carswell, supra.*[8] In the present case we must therefore *presume* the trial court considered only the legally relevant factors and that it did not omit or exaggerate any of them, but orchestrated and evaluated them in a rational way. *Id.; Schroeder v. Brandon,* 141 Tex. 319, 172 S.W.2d 488 (1943); *Lipscomb v. Perry,* 100 Tex. 122, 96 S.W. 1069 (1906); Smith, *Texas Remittitur Practice,* 13 Sw.L.J. 150, 168 (1960). We respectfully urge the Supreme Court of Texas to reconsider the question whether the trial court should be required to state its reasoning in cases such as the present. The matter is important because of the anomaly engendered by the rule of *Flanigan v. Carswell, supra.* A trial-court error is reversible if it "probably prevented the appellant from making a proper presentation of the case to the appellate court...." Tex.R.App.P. 81(b)(1). On the other hand, a trial court's omission to supply the reasons upon which it ordered a remittitur *does* prevent a proper presentation of the case to the appellate court, but it is not even legal error, much less reversible error, under *Flanigan v. Carswell, supra.* We need not discuss the matter further, however, for there is in the present appeal no point of error attacking the trial-court judgment on that ground.

 Owing to the requisite presumption and based upon the record as a whole, we are unable to conclude that the trial court's action was unreasonable in a legal sense. It was Landon's burden to show the unreasonableness or other error in the trial court's determination. The burden has not been carried.

8. In *Flanigan v. Carswell, supra,* the Supreme Court stated as follows:

   [W]e deem it necessary to refer briefly to the Court of Civil Appeals' opinion wherein the majority seem to give some weight to the fact

5. *If the record reveals legal error by the trial court, is the error of a magnitude to require reversal, considering whether its effect on the outcome of the case was prejudicial or whether it adversely affected the fairness of the proceedings as a whole?* There being no showing that the trial court committed any legal error at all, as discussed in numbered paragraphs 1–4, we need not of course consider whether any error was of such a magnitude as to require reversal of the order below under Tex.R.App.P. 81. The content of this inquiry is well illustrated in *Johnson v. United States, supra,* but we need not discuss it here.

For the foregoing reasons, we cannot conclude the order of remittitur was manifestly unjust. *Flanigan v. Carswell, supra.* Finding no error in the only point assigned by Landon, we affirm the judgment below.

ABOUSSIE, Judge, concurring.

I concur in this Court's judgment. The trial court, however, should not be required to explain its reasoning and decision-making process in reaching a result each time it exercises its discretion, or else that authority is eroded.

that the trial court assigned no reason for its action in requiring a remittitur. *We think this has no relevancy in deciding the remittitur question.*
324 S.W.2d at 841 (emphasis added).