Minns v. Piotrowski 









[WITHDRAWN 6-28-95]





IN THE
TENTH COURT OF APPEALS
 

No. 10-92-078-CV

     RICHARD L. MINNS,
                                                                                              Appellant
     v.

     BARBRA PIOTROWSKI, ET AL.,
                                                                                              Appellees
 

From the 311th District Court
Harris County, Texas
Trial Court # 82-09844
                                                                                                    

O P I N I O N
                                                                                                    

      Barbra Piotrowski sued Richard L. Minns for personal injuries sustained when she was
rendered a paraplegic by attackers whom she said Minns hired to assassinate her. The court
imposed a "death-penalty" sanction against Minns for discovery abuse. A jury awarded
Piotrowski $32,100,000 in actual and exemplary damages. We find that the court abused its
discretion in assessing the sanction and reverse the judgment in favor of Piotrowski. We also
reverse the judgment in favor of the State for recovery of $49,999.97, which the Crime Victims'
Compensation Division paid as a result of the criminal act, and set aside a $25,000 monetary
sanction against Minns.
THE CLAIMS
      Piotrowski filed suit for divorce. She later filed a personal injury suit that was transferred to
the family law court and consolidated with the divorce suit. Minns denied that a marriage between
him and Piotrowski ever existed, and as will be seen, the divorce suit never came to trial. The
court sanctioned Minns for discovery abuse by striking his pleadings, and a jury found that
Piotrowski had sustained $18,100,000 in actual damages and was entitled to an additional
$14,000,000 in punitive damages. The court also awarded the State the undisputed amount that
it had paid through its Crime Victims' Compensation Division, to be paid out of Piotrowski's
judgment. Because it is not relevant to our inquiry, we will not detail the evidentiary basis for
Piotrowski's claim.
POINTS OF ERROR
      Minns brings nine points of error. They include assertions of:
      •    error in striking his pleadings without notice and a hearing, resulting in a sanction which
was unjust, excessive, and violative of the due process clause of the United States
Constitution;
      •    abuse of discretion in striking his pleadings;
      •    error in submitting discovery matters to a family court master, in adopting the master's
void rulings without a hearing, and in approving a sanction that the master had no
authority to grant and with which compliance was impossible;
      •    error in imposing a $25,000 monetary sanction in the final judgment because there was
no notice of or basis for the sanction;
      •    error in rendering the judgment because there was no pleading or proof that Minns
intentionally caused Piotrowski's injuries;
      •    no evidence, or insufficient evidence, to support the jury's answer to the question on
punitive damages;
      •    punitive damages that are excessive, unjust, violative of due process, and supported by
factually insufficient evidence;
      •    abuse of discretion in refusing to admit evidence concerning Piotrowski's lack of
credibility and veracity; and
      •    abuse of discretion in refusing to admit evidence of Piotrowski's earning capacity.
SANCTIONS
      Minns' first point complains of the court's striking his pleadings. He says that (1) the order
is void because he was denied notice of the hearing on the motion for sanctions, (2) the judge
abused his discretion under Transamerican Natural Gas Corp. v. Powell in assessing the ultimate
sanction, (3) his physical inability to attend the deposition in question requires that the sanction
be set aside, and (4) the sanctions order violates his rights under the Fourteenth Amendment of
the United States Constitution. See Transamerican Natural Gas Corp. v. Powell, 811 S.W.2d 913
(Tex. 1991) (orig. proceeding).
HISTORY OF THE PROCEEDINGS
      The record reflects a history of attempts by each party to take the other's oral deposition,
including motions for sanctions by both parties. Basically, the discovery dispute which resulted
in the "death-penalty" sanction revolved around Minns' claim that he was being medically advised
not to give the deposition and Piotrowski's assertions that he was able to travel and was abusing
the discovery process. 
      On April 7, 1987, the court heard a motion to compel Minns' deposition and a motion filed
by Minns to quash the deposition notice. The court heard no evidence—only argument of counsel. 
During argument, Piotrowski's counsel said: "It is our position that this is just another tactic
engaged in by [Minns' counsel] and Mr. Minns to keep Mr. Minns from having to come to court." 
The hearing led to an order directing both parties to appear in open court on May 6 to give
deposition testimony.
      On May 4, the court heard arguments on Minns' motion to postpone the May 6 deposition but
heard no evidence. Although counsel read from various documents, none were offered or
admitted into evidence. The court denied the motion to postpone.
      On May 6, the date set for the court-ordered depositions, Minns did not appear. Again, the
court heard no evidence, only argument of counsel. The court could, of course, observe that
Minns did not appear, but the only result of the hearing was to reschedule the depositions for May
8 before a master.
      On May 8, Piotrowski appeared before the master, and the record reflects that Minns was not
present. His attorney stated, "[H]is absence is justified by his medical instruction advised by his
doctor that he should not travel; that he should not be subjected to interrogation. And to do
otherwise would be life-threatening to him." The master proceeded to hear the motion for
sanctions but announced that no default judgment would be granted. Piotrowski's counsel asked
to put on evidence of attorney's fees and expenses, and the following exchange took place:
[COURT MASTER]: I'm going to defer the decision on the default -- and you're telling
me that whenever that hearing on that question is set before [the court], that you're not going
to want to put on evidence again?
 
[PIOTROWSKI'S COUNSEL]: What I'm saying, that the evidence will be there because
we're going to make that record today.
 
[COURT MASTER]: I follow you. My question to you: The day that the hearing is had
before [the court] on the default, that you are going forward without putting on evidence?
 
[PIOTROWSKI'S COUNSEL]: We're going to move for default immediately. All I'm
asking is that we be permitted to make the record to support whatever damages the Court
awards. Let us make that record today to avoid the expense of bringing [Piotrowski] and this
doctor back from California.

. . .
 
[COURT MASTER]: Let me ask you one more time: The day that the hearing is set --
I appreciate what you are saying -- the day that the hearing is had before [the court], which
there's going to be another hearing before [the court] on this matter, are you not going to put
on -- you're not going to bring her down that day? You're not going to put on evidence on
that day?
 
[PIOTROWSKI'S COUNSEL]: Prefer not to have to bring her down. I would put on
evidence, but it will be evidence that is adduced today.
 
[COURT MASTER]: Are you going to bring her back that day with the doctors and
everybody to put on evidence that day?
 
[PIOTROWSKI'S COUNSEL]: No, sir, won't need to.
Piotrowski then testified about the nature and extent of her injuries and about the expenses of her
travel to Houston. Minns' counsel cross-examined her about her condition, various other trips to
Houston, and other travel that she had undertaken. Dr. Gerald Petrofsky, a neurophysiologist,
testified about the nature and extent of Piotrowski's injuries and the probable cost of treating her
condition. Piotrowski's counsel testified about the time spent in connection with the case. The
State introduced business records showing payments to Piotrowski and on her behalf from the
Crime Victims' Compensation Fund and testified about attorney's fees and expenses in connection
with the appearance in court that day. No evidence about the reasons for Minns' failure to give
his deposition or the results of that failure was offered by either party. Piotrowski's counsel
argued:
In addition to the sanctions that we seek for the non-appearance for expenses and
attorney's fees, we ask that the Master present to the Court as part and parcel of the Motion
for Sanctions, a Motion for Default Judgment the evidence presented here today.
Later, in reurging that Minns' pleadings be stricken, Piotrowski's counsel said:
I submit to the Court that the default judgment is appropriate and proper. And if [the
court] would prefer to have a hearing, there's an adequate record here for him to rule on that. 
I don't want [Minn's] deposition. I want a default judgment, which the Rules entitled me to
right now.
      The master granted sanctions of $22,000 in attorney's fees to be paid to Piotrowski's counsel,
$1,200 to Piotrowski for expenses, and $1,100 to the attorney general's office, all to be paid by
5:00 p.m. on the following Friday (May 15). The master also took the request for a default
judgment "under advisement" and suspended Minns' discovery until he gave his deposition.
      On May 15, the master held a hearing to "get the Order entered that was heard -- this was last
week; it was last Friday." The master heard argument of counsel—no evidence—and signed a
report stating: 
Default Judgment is denied.
The order submitted by [Piotrowski's counsel] was entered with one correction. The expenses
to the state was $1,100 and not $1,200 and Mr. Minns was given until Monday May 18,
1987, to pay the money.
The court "adopted, confirmed & ordered" the report on May 19.
      On May 20, the court signed an order that: (1) set Minns' deposition for June 25 in open
court; (2) set Piotrowski's deposition for June 26 in open court; (3) stayed Minns' Request for
Production until his deposition was completed; (4) allowed Piotrowski's deposition only after
Minns completed his deposition; and (5) required Piotrowski's response to Minns' Request for
Production after his deposition was completed. The court signed a second order granting the
monetary sanctions and ordering them paid "on or before Friday, May 18, 1987 at 5:00 o'clock
p.m."
      The court held hearings on various matters on June 17, 24, and 25, 1987, the records of
which reflect a complete absence of evidence being offered or received. On June 24, Minns'
counsel informed the court that his client was willing to travel to London for a deposition in spite
of his having been advised by his doctor not to travel. He further requested that the deposition
not be videotaped and that the proceedings be confidential. After Piotrowski's counsel requested
time to investigate the matter, the court instructed that Minns' proposal be given to her counsel
in written form before noon on that day and reset the matter for the following day.
      On June 25, Piotrowski's counsel appeared and announced ready to take Minns' deposition. 
Minns' counsel told the court that Minns' doctor in Switzerland had advised him not to attend the
proceeding in the United States. Piotrowski then moved for sanctions on the basis of a motion
filed on May 21. After pointing out that the doctor had submitted a letter rather than an affidavit,
Piotrowski's counsel stated:
We reurge that since Mr. Minns, by his own Counsel's statement, he is in contact with
his client, has refused, without coming before this Court and showing good cause, to present
himself to this Court this morning, that the Court within its discretion can go ahead and enter
that default judgment. We have previously put the proof on and will offer and tender to the
Court the testimony of this girl who is a partial quadriplegic without bowel or bladder control,
and the testimony of her doctor; and ask this Court at this time to enter a default judgment as
an appropriate sanction in addition to those sanctions previously rendered by this Court, in
the amount of ten million dollars in past damages and ten million dollars in future damages. 
That is the only way that this matter is ever going to be concluded.
He is now here asking that -- as I see it, we would be required to wait another two
months and then under his thoughts he wants to dictate to the Court how, when, where, and
under what circumstances the deposition is taken without any provisions in the Rules for that
requirement.
I'm asking the Court to impose those appropriate sanctions. If there ever was a case that
demands it, it's this case. And, as I said, I don't need to go back through the litany of what's
gone on in this case and the time that's been required. It's in the pleadings that were filed
May 21st and sets it all out chronologically the number of times that we have tried to get this
man's deposition and the way that he has flaunted this Court's Orders and the Texas Rules
of Procedure. It's contemptuous. And I urge the Court to enter the default judgment for ten
million dollars in past damages and ten million dollars in future damages together with those
sanctions previously imposed by the Court.
He's brought you no evidence of good cause to say why he cannot be here today. More
than a month ago this Court entered an Order for Richard Minns to present himself in this
courtroom on this morning to give his video-taped deposition.
      Minns' counsel objected on the basis that the court could not award damages without a jury
trial and that under Rule 215 "the purpose or objective of the sanctions is not to impose penalties
but to secure discovery." His counsel then urged that the deposition be rescheduled for August
or September of that year. The court first announced that it would grant the requested judgment
on July 10 if Minns did not submit to a deposition in London on July 8. After further argument
during which Piotrowski's counsel objected to the location, the court "reset this matter for the
taking of the deposition of Mr. Minns that was supposed to have been taken this morning until
Wednesday, July the 8th, 1987, at 9:00 a.m. in this courtroom. All other matters will be taken
under consideration at that time." 
      On July 7, Minns filed a motion to postpone the deposition and presented statements from his
doctor in Switzerland in support of his position that he could not "be subjected to the stress of
travel and the stress of interrogation in this court proceeding for a minimum of six months." On
the same day, he filed a notice of the taking of his own deposition in London on November 23,
1987.
      On July 8, when Minns did not appear for his deposition, Piotrowski filed an "Amended
Motion for Sanctions," which included a recitation of the events up to and including that date. 
Minns' counsel argued to the court that Minns was a resident of Switzerland, that no treaty or
convention or agreement existed between the United States and Switzerland that would authorize
the deposition, and that the order for Minns to appear for a deposition violated the sovereignty of
Switzerland and was thus void. He further argued that the court was bound to consider the
medical evidence that was presented because it had been authenticated under Swiss law and that
his own notice of deposition assured that Minns would be available for deposition at the expiration
of the six-month period. Piotrowski argued that Minns' failure to appear was a simple refusal to
comply with the court's orders and urged the court to reconsider the sanctions motion, strike
Minns' pleadings, and enter a default judgment. The court, without hearing evidence, denied the
motion to postpone the deposition and granted Piotrowski's request for sanctions. After
Piotrowski's counsel urged the court to consider the evidence that had been given before the
master, the court struck Minns' pleadings, awarded Piotrowski $20 million in past and future
damages with prejudgment interest, and awarded the State $50,000. The court also imposed
monetary sanctions against Minns of $23,100 for travel expenses and attorney's fees.  
      On August 5, the court signed an amended sanctions order, which awarded Piotrowski
damages in excess of $28 million, $23,100 in travel expense and attorneys fees, and severed
Piotrowski's claims against Minns from her claims against other defendants. After an appeal to
the First Court of Appeals was dismissed as interlocutory, the trial court set both the divorce case
and the question of damages for trial before a jury. See Minns v. Minns, 762 S.W.2d 675 (Tex.
App.—Houston [1st Dist.] 1988, writ denied). On January 17, 1990, the court amended the
sanctions order again. The January 17 order struck Minns' pleadings, imposed all costs to date
in the personal injury action against him, and imposed monetary sanctions in the amount of
$21,300 for attorney's fees, payable to Piotrowski's attorneys. 
      Minns counterclaimed in the divorce action, but on the day of trial, February 25, 1991,
Piotrowski nonsuited her divorce claims and stipulated that she and Minns were never married. 
As previously stated, the jury found $18,100,000 in actual damages and assessed $14,000,000 in
punitive damages. The court signed a final judgment on July 10, 1991.
TRANSAMERICAN
      Minns complains that the court, by striking his pleadings, abused the standards for exercising
its discretion outlined in Transamerican Natural Gas v. Powell. See Transamerican, 811 S.W.2d
at 917-19. Although Transamerican was decided after the court entered its sanctions order, its
principles apply. See id; U.S. Fidelity & Guar. Co. v. Rossa, 830 S.W.2d 668, 672 (Tex.
App.—Waco 1992, writ denied). Additionally, the court had an opportunity to review its ruling
when Minns presented the question in a motion for new trial, which urged Transamerican error. 
See Lassiter v. Shavor, 824 S.W.2d 667, 669 (Tex. App.—Dallas 1992, no writ).
      "Discretion" signifies a power to choose among alternatives within legal bounds. Landon v.
Jean-Paul Budinger, Inc., 724 S.W.2d 931, 935 (Tex. App.—Austin 1987, no writ). The Austin
Court in Landon suggested that an abuse-of-discretion analysis might follow these lines: (a) Was
the determination of the matter committed by law to the trial court's discretion?; (b) Did the court,
in making the determination, recognize and purport to act in an exercise of the discretion
committed to it?; (c) Does the appellate record reveal sufficient facts to show that the court could
have acted rationally in an exercise of its discretion?; (d) Did the court exercise erroneously the
discretion committed to it?; (e) If the court erred, is the error of a magnitude to require reversal? 
Id. at 937-41. Thus, the court must have a sufficient factual basis upon which to make a rational
decision. Id. at 938. This may require a special inquiry, as in the case of alleged jury
misconduct, or may require no evidentiary record at all, as in a ruling on pleadings. Id.
      If the court found that Minns had abused discovery, the proper sanction to be assessed was
a matter committed to the court's discretion under Rule 215. See Transamerican, 811 S.W.2d
at 917; Tex. R. Civ. P. 215. We believe the record shows that the court purported to act in the
exercise of that discretion. We further believe that, if the court erroneously exercised its
discretion, the error in striking Minns' pleadings would, without question, be of such a magnitude
as to require reversal. Thus, we have no concern about the first, second, and fifth steps in the
Landon process. See Landon, 724 S.W.2d at 937-41. Our inquiry will focus then on whether the
record reveals sufficient facts to show that the court could have acted rationally in the exercise of
its discretion and whether the court did erroneously exercise its discretion. See id.
      In assessing the propriety of the court's discretion under Transamerican, we must inquire
whether the court had a sufficient factual basis upon which to make a rational decision. See id.
at 938. Because the sanction ultimately imposed denied Minns the right to defend himself and
implicated due-process considerations, we believe that the trial court was required to hold an
evidentiary hearing so that evidence is in the record to support the factual determinations necessary
to justify imposing that sanction. See id.
      We do not, however, review the legal or factual sufficiency of the evidence as separate claims
when we consider whether a court abused its discretion. Such claims are incorporated into the
determination of whether the court abused its discretion. See Thomas v. Thomas, No. 10-94-051-CV, slip op. at 6, (Tex. App.—Waco March 29, 1995, n.w.h.).
      The discovery dispute that was presented to the court involved a disputed fact. That fact was
whether, as contended by Minns, his medical condition was such that he should be excused from
appearing for a deposition or whether, as contended by Piotrowski, Minns was improperly hiding
behind medical advice in an attempt to thwart her discovery. Minns' failure to appear before the
court was, of course, self-evident. As we have shown, neither the court nor the master ever heard
evidence about the legitimacy of the reasons why Minns' failed to appear for depositions. Minns'
counsel argued from documents which indicated that Minns' was unable to attend a deposition
because of medical advice that he was being given, while Piotrowski's counsel impugned his
position with arguments that asserted unproven facts. None of these arguments can be considered
to be "evidence." Collier Servs. Corp. v. Salinas, 812 S.W.2d 372, 377 (Tex. App.—Corpus
Christi 1991, orig. proceeding) ("Remarks by an attorney during the course of a trial or hearing
are not evidence unless the attorney is actually testifying."); Chamberlain v. Cherry, 818 S.W.2d
201, 208 (Tex. App.—Amarillo 1991, orig. proceeding) ("Pleadings, motions and arguments of
counsel are not evidence."); see also Eckerdt v. Frostex Foods, Inc., 802 S.W.2d 70, 71 (Tex.
App.—Austin 1990, no writ) ("We agree that the attorneys' unsworn statements before the trial
court are not evidence.").
       When Minns presented a motion to quash or postpone a scheduled deposition, he had the
burden of producing evidence to justify his position. Although his counsel argued from documents
that were on file with the court, none were offered into evidence. Thus, Minns' failure to appear
for the scheduled deposition on July 8 was a violation of a court order relating to discovery for
which the court could impose sanctions. See Tex. R. Civ. P. 215. On her motion for sanctions,
however, Piotrowski had the burden of offering evidence to support the requested sanction; yet,
no such evidence appears. This entire lack of evidence in the record will guide our analysis of
Minns' claim that the court could not have acted rationally in the exercise of its discretion. See
Thomas, No. 10-94-051-CV, slip op. at 6; Landon, 724 S.W.2d at 938.
      In Transamerican, the Supreme Court said that "appropriate" and "just" are equivalent
standards. Transamerican, 811 S.W.2d at 916 n.4. A two-step analysis is used to determine if
a sanction is "appropriate." Chrysler Corp. v. Blackmon, 841 S.W.2d 844, 849 (Tex. 1992) (orig.
proceeding). First, a direct relationship between the offensive conduct and the sanction imposed
must exist; and second, the sanction imposed must not be excessive. Id. Thus, "the punishment
should fit the crime." Id. A discovery-abuse sanction, therefore, should be no more severe than
necessary to satisfy its legitimate purpose. Id. In other words, a court must first consider
relatively less stringent sanctions to determine whether lesser sanctions will fully promote
compliance, deterrence, and discourage further abuse. Id. Ultimate penalties, such as exclusion
of essential evidence, striking pleadings, dismissal, and default, should be "the exception rather
than the rule." Lassiter, 824 S.W.2d at 670.
      In Chrysler, the Supreme Court determined that the trial court's action in imposing a sanction
failed to meet the sanctions standards in four ways. Chrysler, 841 S.W.2d at 849. We will
measure the court's decision in this case by the yardstick of each of those tests. First, is there a
direct relationship between the offensive conduct and the sanction imposed? See id. The sanction
must be directed against the abuse and toward remedying the prejudice caused an innocent party. 
Id. Failure to comply with discovery can prejudice a party's efforts to assert or defend a claim. 
But here, as in Chrysler, there was no showing by Piotrowski, the party seeking sanctions at the
July 8 hearing, that she was unable to prepare for trial without compliance by Minns with the
discovery order. See id. at 850.
      Second, was striking Minns' pleadings and rendering a default judgment on liability more
severe than necessary to satisfy the legitimate purposes of sanctions for discovery abuse? Id. The
legitimate purposes of discovery sanctions are: (1) to secure compliance with discovery rules; (2)
to deter other litigants from similar misconduct; and (3) to punish violators. Id. at 849. This
decision fails the test because, the court having failed to conduct an evidentiary hearing to make
the factual determination, the record does not support the court's decision. See Landon, 724
S.W.2d at 938.
      Third, did the court first consider less harsh sanctions and determine whether the lesser
sanctions would fully promote compliance, deterrence, and discourage further abuse? Chrysler,
841 S.W.2d at 850. A lesser sanction, i.e., a monetary award of attorney's fees and expenses,
was first imposed to no avail, although the record reflects an absence of any consideration of
sanctions by the court other than those recommended by the master. We note that in Chrysler the
trial court had ordered a conditional monetary sanction, i.e., $7,500 for each day that Chrysler
failed to produce documents identified by the order, which the Supreme Court considered not to
be a required lesser sanction because "there was no judicial determination that Chrysler failed to
meet [the judge's] deadline for production of the items specified in his Order." Id.
      Fourth, unless the court finds that the sanctioned party's conduct "`justifies a presumption
that its claims or defenses lack merit' and that `it would be unjust to permit the party to present
the substance of that position [which is the subject of the withheld discovery] before the court,'"
sanctions should not be used to deny the offending party a trial on the merits. Id. Here, the court
did make a finding of "a bad faith and dilatory course of conduct," but no evidence supports that
finding. Although we might, in a proper case, deem such a finding, we cannot do so in the
absence of evidence to support it.
      Our analysis has one final inquiry: Did the court "attempt to determine whether the offensive
conduct [was] attributable to counsel only, or to the party only, or to both." See Transamerican,
811 S.W.2d at 917. This inquiry further answers the question of whether the sanctions imposed
relate directly to the abuse found. Piotrowski moved for sanctions against both Minns and his
attorney. Her attorneys repeatedly referred to the bad faith or motive of Minns' attorney. An
example is her May 20 motion for sanctions, which states: ". . . [Minns] and his attorney [of
record] have repeatedly engaged in a bad faith and dilatory course of conduct with the sole purpose
of delaying the trial of this case." At the conclusion of the July 8 hearing, Minns counsel asked
for clarification of the sanctions, and the court announced that they were "assessed against the
party defendant." The written order that the court signed on July 8 finds, however, that "the
defendant, Richard Minns and his attorney [of record] have repeatedly engaged in a bad faith and
dilatory course of conduct with the sole purpose of delaying the trial of this case" but orders
Minns alone to pay the monetary sanction. Thus, the record is, at best, confusing on the issue of
who might be responsible for the conduct about which Piotrowski complained.
      Under this record, we conclude that the "death penalty" did not meet the Transamerican
guidelines as applied in Chrysler and that the court abused its discretion in striking Minns'
pleadings. See id. at 919; Chrysler, 841 S.W.2d at 853. This holding requires that the judgment
be reversed as to both Piotrowski and the State. We sustain point one.
MONETARY SANCTION
      In two points, Minns attacks the monetary sanction of $25,000 assessed against him in the
final judgment. First, he says that the appointment of the master was not authorized and that,
because the sanction was assessed by a master who lacked subject-matter jurisdiction, the sanction
is void. Second, he says that there was no notice of or basis for the imposition of the $25,000
sanction. 
      At the time of the 1991 trial on damages, the interlocutory sanctions order in effect was the
order of January 17, 1990, assessing $21,300 in attorney's fees. Without explanation, the
judgment taxes costs against Minns, "including, but not limited to, the sum of [$25,000] in
sanctions." 
      Minns attacks the sanctions award in the judgment on the grounds that it has no basis. The
record shows that, at the time of the jury trial, the sanctions were not discussed. Thus, the record
provides no reason for assessing the $25,000 sanction.
      Further, the order cannot be sustained on the basis that it made final an interlocutory sanctions
order. On May 20, the court assessed Minns $22,000 for Piotrowski's attorney's fees, $1,200 in
expenses for Piotrowski, and $1,100 in attorney's fees to the attorney general. The July 8 order
assessed $23,100 to reimburse Piotrowski for travel expense and attorney's fees, an amount which
does not match the May 20 assessments. An amended order from the July 8 hearing, signed on
August 5, assessed the same $23,100. Finally, on January 17, 1990, the court amended the order
from the July 8, 1987, hearing again to delete the damages award to Piotrowski and the
reimbursement to the State—the last amendment before the trial on damages—and assessed
$21,300 for Piotrowski's attorney's fees.
      Without anything in the record to justify the amount, the $25,000 sanction cannot stand. We
sustain point four.
OTHER POINTS ON SANCTIONS
      Minns' complaints about the sanctions include a claim that the oral order resetting the
deposition from June 25 until July 8 was never reduced to writing and that punishment cannot be
predicated on an oral pronouncement. He further asserts that the motion for sanctions that was
ultimately granted was filed on the same day it was heard, that no notice of a hearing on the
motion was given, and that the motion was heard over the objections of his counsel. He contends
that Rule 215 has, since September 1, 1990, required that sanctions be granted only "after notice
and hearing," and that the sanctions order is void because notice was not given allowing him an
opportunity to be heard. Minns further contends that the order requiring him to pay monetary
sanctions on May 18, 1987, was not signed until May 20, 1987; thus, he says, the order was
incapable of being performed and is void.
      Minns further argues that the court had no authority to submit the discovery dispute to a
family court master who lacked subject-matter jurisdiction, that the court erred in adopting the
master's recommendations, and that Minns' "inability to attend a deposition because of illness
requires a reversal of a death penalty sanction." 
      Having held that the court abused its discretion in assessing the "death penalty" on July 8,
1987, we do not reach any of these assertions.
EVIDENTIARY RULINGS
      In point eight, Minns says that the court erred in refusing to admit evidence that would have
undermined Piotrowski's credibility and veracity. In point nine, he similarly complains about the
exclusion of evidence that "demonstrated the true nature of [her] earning capacity."
      The specific evidence that Minns asserts was improperly excluded on the question of
Piotrowski's credibility includes:
      •    her abandonment of her claim that a marriage existed between herself and Minns, after
asserting it in court for almost nine years; and
      •    testimony that she had a history of using illegal drugs.
He says that this evidence should have been admitted because (1) Piotrowski placed her own
character in issue, (2) it tended to mitigate the damages claimed by Piotrowski, and (3) it was
proper cross-examination and rebuttal.
      On a bill of exception Minns asked Patsy Ruth Hall, who said that she personally knew both
Piotrowski and Minns, whether Piotrowski "ever confessed to you that she has used illegal drugs?" 
Hall acknowledged that Piotrowski had confessed to such use in 1980. Minns then offered the
testimony to impeach a "statement that [Piotrowski] made in 1980."
      During the direct examination of one of the doctors who testified, medical records were
offered with cover sheets whose captions reflected the divorce suit. This exchange took place: 
[Minns' Counsel]: Your Honor, on each one of these, it states in the Matter of the
Marriage of Barbra Piotrowski Minns and Richard L. Minns on the front cover. There's been
a stipulation that there never was a marriage. There's been a nonsuit with prejudice signed
by this Court.
This is false. And I also would like the opportunity for the record to reflect that I'm
again asking the Court for permission to let this jury know that she made false marriage
accusations.
 
THE COURT: Well, I don't know how many times I'm going to have to overrule that
request, [Counsel]. It seems as though I think it was a good number of times yesterday. I'm
going to again overrule your request and inform the jury in regards to nothing pertaining to
the nonsuit.
      Evidence is relevant if it has any tendency to make the existence of any fact that is of
consequence to the determination of the action more probable or less probable than it would be
without the evidence. Tex. R. Civ. Evid. 401. Rule 402 provides in part: "Evidence which is
not relevant is inadmissible." Id. 402. The credibility of a witness may be attacked by evidence
in the form of opinion or reputation, subject to certain limitations; specific instances of conduct
may not be inquired about on cross-examination or proved by extrinsic evidence. Id. 608. The
determination of whether evidence is relevant to any issue in the case lies within the sound
discretion of the court. Russell v. Hankerson, 771 S.W.2d 650, 654 (Tex. App.—Corpus Christi
1989, writ denied). Further, error may not be predicated upon a ruling that admits or excludes
evidence unless a substantial right of the party is affected. Tex. R. Civ. Evid. 103(a). 
      Based on these rules, we cannot say that the court abused its discretion in refusing to allow
Minns to adduce evidence of possible drug use that occurred more than ten years before trial or
in refusing to allow testimony about the nonsuited divorce case. We overrule point eight.
      On the question of earning capacity, Piotrowski testified that she was a registered nurse, was
working when she was attacked, and she had earned nothing for many years after the attack. 
Minns wanted to cross-examine her about whether she had filed tax returns from 1975 to 1979 and
about a newspaper article that inferred that she had received fringe benefits in 1986. He says that
the exclusion was prejudicial because her economist rendered an opinion of her future earnings
based on her earnings before 1980.
      Cross-examination is a valuable right, and it is error to so restrict it so as to prevent the
cross-examining party from going fully into all matters connected with the examination in chief. 
Davidson v. Great Nat. Life Ins. Co., 737 S.W.2d 312, 314 (Tex. 1987). A witness may be cross-examined on any matter relevant to any issue in the case, including credibility. Tex. R. Civ.
Evid. 611(b).
      Based on these rules, we believe that the court should have permitted cross-examination about
any earnings that the income tax returns might have shown and about whether Piotrowski received
any fringe benefits during the time she claimed lost earning capacity. See id.
      Finding that the court erred in refusing to allow the cross-examination, we need not address
the question of harm because we have determined that the sanction error requires reversal. We
sustain point nine.
PLEADING DEFECT
      An issue that may arise on retrial is involved in Minns' fifth point, asserting that Piotrowski
did not plead that he intentionally caused her injuries. Minns did not specially except to
Piotrowski's Fourth Amended Original Petition, which included allegations that Minns: 
caused . . . Anderson to hire . . . Steen and . . . Ivery to murder your Petitioner . . . ; . . .
Ivery fired four shots into Petitioner's body at close range . . . . The acts of [Minns] were
intentional and were calculated to cause severe injury and the [probability] of [the] death of
[Piotrowski]. The conduct of [Minns] has been willful, wanton and totally without
justification.

      We agree with Piotrowski that her pleading gave fair notice to Minns of the basis of her
complaints. See Stoner v. Thompson, 578 S.W.2d 679, 683 (Tex. 1979).
EXEMPLARY DAMAGES
      In two points, Minns asserts that the evidence in support of the jury's answer to the
exemplary-damages question is legally or factually insufficient and that the award is excessive,
manifestly unjust, and violative of due process. Because the case must be remanded and because
at another trial the question of the entitlement to and amount, if any, of exemplary damages will
be controlled by Transportation Ins. Co. v. Moriel, 879 S.W.2d 10 (Tex. 1994), we will not
address the award that was made in the 1991 trial.
CONCLUSION
      Having determined that the court erred by abusing its discretion in striking Minns' pleadings
and in assessing a monetary sanction having no basis in the record, we reverse the judgment and
remand the cause for a new trial.


                                                                                 BILL VANCE
                                                                                 Justice

Before Chief Justice Thomas,
          Justice Cummings, and
          Justice Vance
Reversed and remanded
Opinion delivered and filed May 17, 1995
Do not publish
[WITHDRAWN 6-28-95]