**Richard L. MINNS, Appellant,**

v.

**Barbra PIOTROWSKI, et al., Appellees.**

**No. 10–92–078–CV.**

Court of Appeals of Texas,
Waco.

June 28, 1995.

Rehearing Overruled July 19, 1995.

---

J. Bruce Bennett, Baskin, Bennett & Komkov, L.L.P., Austin, William W. Kilgarlin, Santa Fe, New Mexico, for appellant.

G.P. Hardy, III, Hardy & Johns, Houston, Matt Dawson, Dawson, Sodd & Moe, P.C., Corsicana, John P. Giberson, Atty. General's Office, Tort Litigation Division, Austin, for appellees.

Before THOMAS, C.J., and CUMMINGS and VANCE, JJ.

## OPINION

VANCE, Justice.

Barbra Piotrowski sued Richard L. Minns for personal injuries sustained when she was rendered a paraplegic by attackers whom she said Minns hired to assassinate her. The court imposed a "death-penalty" sanction against Minns for discovery abuse. A jury awarded Piotrowski $32,100,000 in actual and exemplary damages. We find that the court abused its discretion in assessing the sanction and reverse the judgment in favor of Piotrowski. We also reverse the judgment in favor of the State for recovery of $49,999.97, which the Crime Victims' Compensation Division paid as a result of the criminal act, and set aside a $25,000 monetary sanction against Minns.

## THE CLAIMS

Piotrowski filed suit for divorce. She later filed a personal injury suit that was transferred to the family law court and consolidated with the divorce suit. Minns denied that a marriage between him and Piotrowski ever existed, and as will be seen, the divorce suit never came to trial. The court sanctioned Minns for discovery abuse by striking his pleadings, and a jury found that Piotrowski had sustained $18,100,000 in actual damages and was entitled to an additional $14,000,000 in punitive damages. The court also awarded the State the undisputed amount that it had paid through its Crime Victims' Compensation Division, to be paid out of Piotrowski's judgment. Because it is not relevant to our inquiry, we will not detail the evidentiary basis for Piotrowski's claim.

## POINTS OF ERROR

Minns brings nine points of error. They include assertions of:

- error in striking his pleadings without notice and a hearing, resulting in a sanction which was unjust, excessive, and violative of the due process clause of the United States Constitution;
- abuse of discretion in striking his pleadings;
- error in submitting discovery matters to a family court master, in adopting the master's void rulings without a hearing, and in approving a sanction that the master had no authority to grant and with which compliance was impossible;
- error in imposing a $25,000 monetary sanction in the final judgment because there was no notice of or basis for the sanction;
- error in rendering the judgment because there was no pleading or proof that Minns intentionally caused Piotrowski's injuries;

- no evidence, or insufficient evidence, to support the jury's answer to the question on punitive damages;
- punitive damages that are excessive, unjust, violative of due process, and supported by factually insufficient evidence;
- abuse of discretion in refusing to admit evidence concerning Piotrowski's lack of credibility and veracity; and
- abuse of discretion in refusing to admit evidence of Piotrowski's earning capacity.

## SANCTIONS

Minns' first point complains of the court's striking his pleadings. He says that (1) the order is void because he was denied notice of the hearing on the motion for sanctions, (2) the judge abused his discretion under *Trans-American Natural Gas Corp. v. Powell* in assessing the ultimate sanction, (3) his physical inability to attend the deposition in question requires that the sanction be set aside, and (4) the sanctions order violates his rights under the Fourteenth Amendment of the United States Constitution. *See Trans-American Natural Gas Corp. v. Powell*, 811 S.W.2d 913 (Tex.1991) (orig. proceeding).

HISTORY OF THE PROCEEDINGS

The record reflects a history of attempts by each party to take the other's oral deposition, including motions for sanctions by both parties. Basically, the discovery dispute which resulted in the "death-penalty" sanction revolved around Minns' claim that he was being medically advised not to give the deposition and Piotrowski's assertions that he was able to travel and was abusing the discovery process.

On April 7, 1987, the court heard a motion to compel Minns' deposition and a motion filed by Minns to quash the deposition notice. The court heard no evidence—only argument of counsel. During argument, Piotrowski's counsel said: "It is our position that this is just another tactic engaged in by [Minns' counsel] and Mr. Minns to keep Mr. Minns from having to come to court." The hearing led to an order directing both parties to appear in open court on May 6 to give deposition testimony.

On May 4, the court heard arguments on Minns' motion to postpone the May 6 deposition but heard no evidence. Although counsel read from various documents, none were offered or admitted into evidence. The court denied the motion to postpone.

On May 6, the date set for the court-ordered depositions, Minns did not appear. Again, the court heard no evidence, only argument of counsel. The court could, of course, observe that Minns did not appear, but the only result of the hearing was to reschedule the depositions for May 8 before a master.

On May 8, Piotrowski appeared before the master, and the record reflects that Minns was not present. His attorney stated, "[H]is absence is justified by his medical instruction advised by his doctor that he should not travel; that he should not be subjected to interrogation. And to do otherwise would be life-threatening to him." The master proceeded to hear the motion for sanctions but announced that no default judgment would be granted. Piotrowski's counsel asked to put on evidence of attorney's fees and expenses, and the following exchange took place:

[COURT MASTER]: I'm going to defer the decision on the default—and you're telling me that whenever that hearing on that question is set before [the court], that you're not going to want to put on evidence again?

[PIOTROWSKI'S COUNSEL]: What I'm saying, that the evidence will be there because we're going to make that record today.

[COURT MASTER]: I follow you. My question to you: The day that the hearing is had before [the court] on the default, that you are going forward without putting on evidence?

[PIOTROWSKI'S COUNSEL]: We're going to move for default immediately. All I'm asking is that we be permitted to make the record to support whatever damages the Court awards. Let us make that record today to avoid the expense of bringing

[Piotrowski] and this doctor back from California.

.    .    .    .    .

[COURT MASTER]: Let me ask you one more time: The day that the hearing is set—I appreciate what you are saying—the day that the hearing is had before [the court], which there's going to be another hearing before [the court] on this matter, are you not going to put on—you're not going to bring her down that day? You're not going to put on evidence on that day?

[PIOTROWSKI'S COUNSEL]: Prefer not to have to bring her down. I would put on evidence, but it will be evidence that is adduced today.

[COURT MASTER]: Are you going to bring her back that day with the doctors and everybody to put on evidence that day?

[PIOTROWSKI'S COUNSEL]: No, sir, won't need to.

Piotrowski then testified about the nature and extent of her injuries and about the expenses of her travel to Houston. Minns' counsel cross-examined her about her condition, various other trips to Houston, and other travel that she had undertaken. Dr. Gerald Petrofsky, a neurophysiologist, testified about the nature and extent of Piotrowski's injuries and the probable cost of treating her condition. Piotrowski's counsel testified about the time spent in connection with the case. The State introduced business records showing payments to Piotrowski and on her behalf from the Crime Victims' Compensation Fund and testified about attorney's fees and expenses in connection with the appearance in court that day. No evidence about the reasons for Minns' failure to give his deposition or the results of that failure was offered by either party. Piotrowski's counsel argued:

In addition to the sanctions that we seek for the non-appearance for expenses and attorney's fees, we ask that the Master present to the Court as part and parcel of the Motion for Sanctions, a Motion for Default Judgment the evidence presented here today.

Later, in reurging that Minns' pleadings be stricken, Piotrowski's counsel said:

I submit to the Court that the default judgment is appropriate and proper. And if [the court] would prefer to have a hearing, there's an adequate record here for him to rule on that. I don't want [Minns'] deposition. I want a default judgment, which the Rules entitled me to right now.

The master granted sanctions of $22,000 in attorney's fees to be paid to Piotrowski's counsel, $1,200 to Piotrowski for expenses, and $1,100 to the attorney general's office, all to be paid by 5:00 p.m. on the following Friday (May 15). The master also took the request for a default judgment "under advisement" and suspended Minns' discovery until he gave his deposition.

On May 15, the master held a hearing to "get the Order entered that was heard—this was last week; it was last Friday." The master heard argument of counsel—no evidence—and signed a report stating:

Default Judgment is denied.

The order submitted by [Piotrowski's counsel] was entered with one correction. The expenses to the state was $1,100 and not $1,200 and Mr. Minns was given until Monday May 18, 1987, to pay the money.

The court "adopted, confirmed & ordered" the report on May 19.

On May 20, the court signed an order that: (1) set Minns' deposition for June 25 in open court; (2) set Piotrowski's deposition for June 26 in open court; (3) stayed Minns' Request for Production until his deposition was completed; (4) allowed Piotrowski's deposition only after Minns completed his deposition; and (5) required Piotrowski's response to Minns' Request for Production after his deposition was completed. The court signed a second order granting the monetary sanctions and ordering them paid "on or before Friday, May 18, 1987 at 5:00 o'clock p.m."

The court held hearings on various matters on June 17, 24, and 25, 1987, the records of which reflect a complete absence of evidence being offered or received. On June 24, Minns' counsel informed the court that his client was willing to travel to London for a

deposition in spite of his having been advised by his doctor not to travel. He further requested that the deposition not be videotaped and that the proceedings be confidential. After Piotrowski's counsel requested time to investigate the matter, the court instructed that Minns' proposal be given to her counsel in written form before noon on that day and reset the matter for the following day.

On June 25, Piotrowski's counsel appeared and announced ready to take Minns' deposition. Minns' counsel told the court that Minns' doctor in Switzerland had advised him not to attend the proceeding in the United States. Piotrowski then moved for sanctions on the basis of a motion filed on May 21. After pointing out that the doctor had submitted a letter rather than an affidavit, Piotrowski's counsel stated:

> We reurge that since Mr. Minns, by his own Counsel's statement, he is in contact with his client, has refused, without coming before this Court and showing good cause, to present himself to this Court this morning, that the Court within its discretion can go ahead and enter that default judgment. We have previously put the proof on and will offer and tender to the Court the testimony of this girl who is a partial quadriplegic without bowel or bladder control, and the testimony of her doctor; and ask this Court at this time to enter a default judgment as an appropriate sanction in addition to those sanctions previously rendered by this Court, in the amount of ten million dollars in past damages and ten million dollars in future damages. That is the only way that this matter is ever going to be concluded.
>
> He is now here asking that—as I see it, we would be required to wait another two months and then under his thoughts he wants to dictate to the Court how, when, where, and under what circumstances the deposition is taken without any provisions in the Rules for that requirement.
>
> I'm asking the Court to impose those appropriate sanctions. If there ever was a case that demands it, it's this case. And, as I said, I don't need to go back through the litany of what's gone on in this case and the time that's been required. It's in

the pleadings that were filed May 21st and sets it all out chronologically the number of times that we have tried to get this man's deposition and the way that he has flaunted this Court's Orders and the Texas Rules of Procedure. It's contemptuous. And I urge the Court to enter the default judgment for ten million dollars in past damages and ten million dollars in future damages together with those sanctions previously imposed by the Court.

> He's brought you no evidence of good cause to say why he cannot be here today. More than a month ago this Court entered an Order for Richard Minns to present himself in this courtroom on this morning to give his video-taped deposition.

Minns' counsel objected on the basis that the court could not award damages without a jury trial and that under Rule 215 "the purpose or objective of the sanctions is not to impose penalties but to secure discovery." His counsel then urged that the deposition be rescheduled for August or September of that year. The court first announced that it would grant the requested judgment on July 10 if Minns did not submit to a deposition in London on July 8. After further argument during which Piotrowski's counsel objected to the location, the court "reset this matter for the taking of the deposition of Mr. Minns that was supposed to have been taken this morning until Wednesday, July the 8th, 1987, at 9:00 a.m. in this courtroom. All other matters will be taken under consideration at that time."

On July 7, Minns filed a motion to postpone the deposition and presented statements from his doctor in Switzerland in support of his position that he could not "be subjected to the stress of travel and the stress of interrogation in this court proceeding for a minimum of six months." On the same day, he filed a notice of the taking of his own deposition in London on November 23, 1987.

On July 8, when Minns did not appear for his deposition, Piotrowski filed an "Amended Motion for Sanctions," which included a recitation of the events up to and including that date. Minns' counsel argued to the court that Minns was a resident of Switzerland,

that no treaty or convention or agreement existed between the United States and Switzerland that would authorize the deposition, and that the order for Minns to appear for a deposition violated the sovereignty of Switzerland and was thus void. He further argued that the court was bound to consider the medical evidence that was presented because it had been authenticated under Swiss law and that his own notice of deposition assured that Minns would be available for deposition at the expiration of the six-month period. Piotrowski argued that Minns' failure to appear was a simple refusal to comply with the court's orders and urged the court to reconsider the sanctions motion, strike Minns' pleadings, and enter a default judgment. The court, without hearing evidence, denied the motion to postpone the deposition and granted Piotrowski's request for sanctions. After Piotrowski's counsel urged the court to consider the evidence that had been given before the master, the court struck Minns' pleadings, awarded Piotrowski $20 million in past and future damages with prejudgment interest, and awarded the State $50,000. The court also imposed monetary sanctions against Minns of $23,100 for travel expenses and attorney's fees.

On August 5, the court signed an amended sanctions order, which awarded Piotrowski damages in excess of $28 million, $23,100 in travel expense and attorneys fees, and severed Piotrowski's claims against Minns from her claims against other defendants. After an appeal to the First Court of Appeals was dismissed as interlocutory, the trial court set both the divorce case and the question of damages for trial before a jury. See Minns v. Minns, 762 S.W.2d 675 (Tex.App.—Houston [1st Dist.] 1988, writ denied). On January 17, 1990, the court amended the sanctions order again. The January 17 order struck Minns' pleadings, imposed all costs to date in the personal injury action against him, and imposed monetary sanctions in the amount of $21,300 for attorney's fees, payable to Piotrowski's attorneys.

Minns counterclaimed in the divorce action, but on the day of trial, February 25, 1991, Piotrowski nonsuited her divorce claims and stipulated that she and Minns were nev-

er married. As previously stated, the jury found $18,100,000 in actual damages and assessed $14,000,000 in punitive damages. The court signed a final judgment on July 10, 1991.

**TRANSAMERICAN**

Minns complains that the court, by striking his pleadings, abused the standards for exercising its discretion outlined in *TransAmerican Natural Gas v. Powell.* See *TransAmerican,* 811 S.W.2d at 917–19. Although *TransAmerican* was decided after the court entered its sanctions order, its principles apply. See *id.; U.S. Fidelity & Guar. Co. v. Rossa,* 830 S.W.2d 668, 672 (Tex.App.—Waco 1992, writ denied). Additionally, the court had an opportunity to review its ruling when Minns presented the question in a motion for new trial, which urged *TransAmerican* error. See *Lassiter v. Shavor,* 824 S.W.2d 667, 669 (Tex.App.—Dallas 1992, no writ).

"Discretion" signifies a power to choose among alternatives within legal bounds. *Landon v. Jean–Paul Budinger, Inc.,* 724 S.W.2d 931, 935 (Tex.App.—Austin 1987, no writ). The Austin Court in *Landon* suggested that an abuse-of-discretion analysis might follow these lines: (a) Was the determination of the matter committed by law to the trial court's discretion?; (b) Did the court, in making the determination, recognize and purport to act in an exercise of the discretion committed to it?; (c) Does the appellate record reveal sufficient facts to show that the court could have acted rationally in an exercise of its discretion?; (d) Did the court exercise erroneously the discretion committed to it?; (e) If the court erred, is the error of a magnitude to require reversal? *Id.* at 937–41. Thus, the court must have a sufficient factual basis upon which to make a rational decision. *Id.* at 938. This may require a special inquiry, as in the case of alleged jury misconduct, or may require no evidentiary record at all, as in a ruling on pleadings. *Id.*

If the court found that Minns had abused discovery, the proper sanction to be assessed was a matter committed to the court's discretion under Rule 215. See *TransAmerican,* 811 S.W.2d at 917; TEX.

R.Civ.P. 215. We believe the record shows that the court purported to act in the exercise of that discretion. We further believe that, if the court erroneously exercised its discretion, the error in striking Minns' pleadings would, without question, be of such a magnitude as to require reversal. Thus, we have no concern about the first, second, and fifth steps in the *Landon* process. *See Landon*, 724 S.W.2d at 937–41. Our inquiry will focus then on whether the record reveals sufficient facts to show that the court could have acted rationally in the exercise of its discretion and whether the court did erroneously exercise its discretion. *See id.*

■ In assessing the propriety of the court's discretion under *TransAmerican*, we must inquire whether the court had a sufficient factual basis upon which to make a rational decision. *See id.* at 938. The sanction ultimately imposed denied Minns the right to defend himself and implicated due-process considerations. *See TransAmerican*, 811 S.W.2d at 918. We believe that a trial court is required to hold an identifiable evidentiary hearing before imposing such a sanction, so that evidence in the record supports the factual determinations necessary to exercise its discretion in that manner. *See Electronic Data Systems Corp. v. Tyson*, 862 S.W.2d 728, 739 (Tex.App.—Dallas 1993, orig. proceeding); *see also Chrysler Corp. v. Blackmon*, 841 S.W.2d 844, 850 (Tex.1992) (orig. proceeding) (no evidence to support presumption of lack of merit, flagrant bad faith, or callous disregard for the obligations of discovery).

■ We do not, however, review the legal or factual sufficiency of the evidence as separate claims when we consider whether a court abused its discretion. Such claims are incorporated into the determination of whether the court abused its discretion. *See Thomas v. Thomas*, 895 S.W.2d 895, 898 (Tex.App.—Waco 1995, writ requested).

The discovery dispute that was presented to the court involved a disputed fact. That fact was whether, as contended by Minns, his medical condition was such that he should be excused from appearing for a deposition or whether, as contended by Piotrowski, Minns was improperly hiding behind medical advice in an attempt to thwart her discovery. Minns' failure to appear before the court was, of course, self-evident. As we have shown, neither the court nor the master ever heard evidence about the legitimacy of the reasons why Minns failed to appear for depositions. Minns' counsel argued from documents which indicated that Minns was unable to attend a deposition because of medical advice that he was being given, while Piotrowski's counsel impugned his position with arguments that asserted unproven facts. None of these arguments can be considered to be "evidence." *Collier Servs. Corp. v. Salinas*, 812 S.W.2d 372, 377 (Tex.App.—Corpus Christi 1991, orig. proceeding) ("Remarks by an attorney during the course of a trial or hearing are not evidence unless the attorney is actually testifying."); *Chamberlain v. Cherry*, 818 S.W.2d 201, 208 (Tex.App.—Amarillo 1991, orig. proceeding) ("Pleadings, motions and arguments of counsel are not evidence."); *see also Eckerdt v. Frostex Foods, Inc.*, 802 S.W.2d 70, 71 (Tex.App.—Austin 1990, no writ) ("We agree that the attorneys' unsworn statements before the trial court are not evidence.").

■ When Minns presented a motion to quash or postpone a scheduled deposition, he had the burden of producing evidence to justify his position. Although his counsel argued from documents that were on file with the court, none were offered into evidence. Thus, Minns' failure to appear for the scheduled deposition on July 8 was a violation of a court order relating to discovery for which the court could impose sanctions. *See* Tex.R.Civ.P. 215. On her motion for sanctions, however, Piotrowski had the burden of offering evidence to support the requested sanction; yet, no such evidence appears. This entire lack of evidence at the sanctions hearings will guide our analysis of the record in reviewing Minns' claim that the court could not have acted rationally when it exercised its discretion to impose the ultimate sanction. *See Thomas*, 895 S.W.2d at 898; *Landon*, 724 S.W.2d at 938.

■ In *TransAmerican*, the Supreme Court said that "appropriate" and "just" are equivalent standards. *TransAmerican*, 811

S.W.2d at 916 n. 4. A two-step analysis is used to determine if a sanction is "appropriate." *Chrysler*, 841 S.W.2d at 849. First, a direct relationship between the offensive conduct and the sanction imposed must exist; and second, the sanction imposed must not be excessive. *Id.* Thus, "the punishment should fit the crime." *Id.* A discovery-abuse sanction, therefore, should be no more severe than necessary to satisfy its legitimate purpose. *Id.* In other words, a court must first consider relatively less stringent sanctions to determine whether lesser sanctions will fully promote compliance, deterrence, and discourage further abuse. *Id.* Ultimate penalties, such as exclusion of essential evidence, striking pleadings, dismissal, and default, should be "the exception rather than the rule." *Lassiter*, 824 S.W.2d at 670.

In *Chrysler*, the Supreme Court determined that the trial court's action in imposing a sanction failed to meet the sanctions standards in four ways. *Chrysler*, 841 S.W.2d at 849. We will measure the court's decision in this case by the yardstick of each of those tests. First, is there a direct relationship between the offensive conduct and the sanction imposed? *See id.* The sanction must be directed against the abuse and toward remedying the prejudice caused an innocent party. *Id.* Failure to comply with discovery can prejudice a party's efforts to assert or defend a claim. But here, as in *Chrysler*, there was no showing by Piotrowski, the party seeking sanctions at the July 8 hearing, that she was unable to prepare for trial without compliance by Minns with the discovery order. *See id.* at 850.

Second, was striking Minns' pleadings and rendering a default judgment on liability more severe than necessary to satisfy the legitimate purposes of sanctions for discovery abuse? *Id.* The legitimate purposes of discovery sanctions are: (1) to secure compliance with discovery rules; (2) to deter other litigants from similar misconduct; and (3) to punish violators. *Id.* at 849. This decision fails the test because, the court having failed to conduct an evidentiary hearing to make the factual determination, the record does not support the court's decision. *See Landon*, 724 S.W.2d at 938.

Third, did the court first consider less harsh sanctions and determine whether the lesser sanctions would fully promote compliance, deterrence, and discourage further abuse? *Chrysler*, 841 S.W.2d at 850. A lesser sanction, *i.e.*, a monetary award of attorney's fees and expenses, was first imposed to no avail, although the record reflects an absence of any consideration of sanctions by the court other than those recommended by the master. We note that in *Chrysler* the trial court had ordered a conditional monetary sanction, *i.e.*, $7,500 for each day that Chrysler failed to produce documents identified by the order, which the Supreme Court considered not to be a required lesser sanction because "there was no judicial determination that Chrysler failed to meet [the judge's] deadline for production of the items specified in his Order." *Id.*

Fourth, unless the court finds that the sanctioned party's conduct " 'justifies a presumption that its claims or defenses lack merit' and that 'it would be unjust to permit the party to present the substance of that position [which is the subject of the withheld discovery] before the court,' " sanctions should not be used to deny the offending party a trial on the merits. *Id.* Here, the court did make a finding of "a bad faith and dilatory course of conduct," but no evidence supports that finding. Although we might, in a proper case, deem such a finding, we cannot do so in the absence of evidence to support it.

Our analysis has one final inquiry: Did the court "attempt to determine whether the offensive conduct [was] attributable to counsel only, or to the party only, or to both"? *See TransAmerican*, 811 S.W.2d at 917. This inquiry further answers the question of whether the sanctions imposed relate directly to the abuse found. Piotrowski moved for sanctions against both Minns and his attorney. Her attorneys repeatedly referred to the bad faith or motive of Minns' attorney. An example is her May 20 motion for sanctions, which states: " . . . [Minns] and his attorney [of record] have repeatedly engaged in a bad faith and dilatory course of conduct with the sole purpose of delaying the

trial of this case." At the conclusion of the July 8 hearing, Minns' counsel asked for clarification of the sanctions, and the court announced that they were "assessed against the party defendant." The written order that the court signed on July 8 finds, however, that "the defendant, Richard Minns and his attorney [of record] have repeatedly engaged in a bad faith and dilatory course of conduct with the sole purpose of delaying the trial of this case" but orders Minns alone to pay the monetary sanction. Thus, the record is, at best, confusing on the issue of who might be responsible for the conduct about which Piotrowski complained.

Under this record, we conclude that the "death penalty" did not meet the *Trans-American* guidelines as applied in *Chrysler* and that the court abused its discretion in striking Minns' pleadings. *See id.* at 919; *Chrysler*, 841 S.W.2d at 853. This holding requires that the judgment be reversed as to both Piotrowski and the State. We sustain point one.

## MONETARY SANCTION

In two points, Minns attacks the monetary sanction of $25,000 assessed against him in the final judgment. First, he says that the appointment of the master was not authorized and that, because the sanction was assessed by a master who lacked subject-matter jurisdiction, the sanction is void. Second, he says that there was no notice of or basis for the imposition of the $25,000 sanction.

At the time of the 1991 trial on damages, the interlocutory sanctions order in effect was the order of January 17, 1990, assessing $21,300 in attorney's fees. Without explanation, the judgment taxes costs against Minns, "including, but not limited to, the sum of [$25,000] in sanctions."

Minns attacks the sanctions award in the judgment on the grounds that it has no basis. The record shows that, at the time of the jury trial, the sanctions were not discussed. Thus, the record provides no reason for assessing the $25,000 sanction.

■ Further, the order cannot be sustained on the basis that it made final an interlocutory sanctions order. On May 20, the court assessed Minns $22,000 for Piotrowski's attorney's fees, $1,200 in expenses for Piotrowski, and $1,100 in attorney's fees to the attorney general. The July 8 order assessed $23,100 to reimburse Piotrowski for travel expense and attorney's fees, an amount which does not match the May 20 assessments. An amended order from the July 8 hearing, signed on August 5, assessed the same $23,100. Finally, on January 17, 1990, the court amended the order from the July 8, 1987, hearing again to delete the damages award to Piotrowski and the reimbursement to the State—the last amendment before the trial on damages—and assessed $21,300 for Piotrowski's attorney's fees.

Without anything in the record to justify the amount, the $25,000 sanction cannot stand. We sustain point four.

## OTHER POINTS ON SANCTIONS

Minns' complaints about the sanctions include a claim that the oral order resetting the deposition from June 25 until July 8 was never reduced to writing and that punishment cannot be predicated on an oral pronouncement. He further asserts that the motion for sanctions that was ultimately granted was filed on the same day it was heard, that no notice of a hearing on the motion was given, and that the motion was heard over the objections of his counsel. He contends that Rule 215 has, since September 1, 1990, required that sanctions be granted only "after notice and hearing," and that the sanctions order is void because notice was not given allowing him an opportunity to be heard. Minns further contends that the order requiring him to pay monetary sanctions on May 18, 1987, was not signed until May 20, 1987; thus, he says, the order was incapable of being performed and is void.

Minns further argues that the court had no authority to submit the discovery dispute to a family court master who lacked subject-matter jurisdiction, that the court erred in adopting the master's recommendations, and that Minns' "inability to attend a deposition because of illness requires a reversal of a death penalty sanction."

Having held that the court abused its discretion in assessing the "death penalty" on July 8, 1987, we do not reach any of these assertions.

## EVIDENTIARY RULINGS

In point eight, Minns says that the court erred in refusing to admit evidence that would have undermined Piotrowski's credibility and veracity. In point nine, he similarly complains about the exclusion of evidence that "demonstrated the true nature of [her] earning capacity."

The specific evidence that Minns asserts was improperly excluded on the question of Piotrowski's credibility includes:

- her abandonment of her claim that a marriage existed between herself and Minns, after asserting it in court for almost nine years; and
- testimony that she had a history of using illegal drugs.

He says that this evidence should have been admitted because (1) Piotrowski placed her own character in issue, (2) it tended to mitigate the damages claimed by Piotrowski, and (3) it was proper cross-examination and rebuttal.

On a bill of exception Minns asked Patsy Ruth Hall, who said that she personally knew both Piotrowski and Minns, whether Piotrowski "ever confessed to you that she has used illegal drugs?" Hall acknowledged that Piotrowski had confessed to such use in 1980. Minns then offered the testimony to impeach a "statement that [Piotrowski] made in 1980."

During the direct examination of one of the doctors who testified, medical records were offered with cover sheets whose captions reflected the divorce suit. This exchange took place:

> [Minns' Counsel]: Your Honor, on each one of these, it states in the Matter of the Marriage of Barbra Piotrowski Minns and Richard L. Minns on the front cover. There's been a stipulation that there never was a marriage. There's been a nonsuit with prejudice signed by this Court. This is false. And I also would like the opportunity for the record to reflect that I'm again asking the Court for permission to let this jury know that she made false marriage accusations.
>
> THE COURT: Well, I don't know how many times I'm going to have to overrule that request, [Counsel]. It seems as though I think it was a good number of times yesterday. I'm going to again overrule your request and inform the jury in regards to nothing pertaining to the nonsuit.

Evidence is relevant if it has any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. Tex. R.Civ.Evid. 401. Rule 402 provides in part: "Evidence which is not relevant is inadmissible." *Id.* 402. The credibility of a witness may be attacked by evidence in the form of opinion or reputation, subject to certain limitations; specific instances of conduct may not be inquired about on cross-examination or proved by extrinsic evidence. *Id.* 608. The determination of whether evidence is relevant to any issue in the case lies within the sound discretion of the court. *Russell v. Hankerson,* 771 S.W.2d 650, 654 (Tex.App.—Corpus Christi 1989, writ denied). Further, error may not be predicated upon a ruling that admits or excludes evidence unless a substantial right of the party is affected. Tex.R.Civ.Evid. 103(a).

Based on these rules, we cannot say that the court abused its discretion in refusing to allow Minns to adduce evidence of possible drug use that occurred more than ten years before trial or in refusing to allow testimony about the nonsuited divorce case. We overrule point eight.

On the question of earning capacity, Piotrowski testified that she was a registered nurse, was working when she was attacked, and she had earned nothing for many years after the attack. Minns wanted to cross-examine her about whether she had filed tax returns from 1975 to 1979 and about a newspaper article that inferred that she had received fringe benefits in 1986. He says that the exclusion was prejudicial because her economist rendered an opinion of her future earnings based on her earnings before 1980.

 Cross-examination is a valuable right, and it is error to so restrict it so as to prevent the cross-examining party from going fully into all matters connected with the examination in chief. *Davidson v. Great Nat. Life Ins. Co.,* 737 S.W.2d 312, 314 (Tex. 1987). A witness may be cross-examined on any matter relevant to any issue in the case, including credibility. TEX.R.CIV.EVID. 611(b).

Based on these rules, we believe that the court should have permitted cross-examination about any earnings that the income tax returns might have shown and about whether Piotrowski received any fringe benefits during the time she claimed lost earning capacity. *See id.*

Finding that the court erred in refusing to allow the cross-examination, we need not address the question of harm because we have determined that the sanction error requires reversal. We sustain point nine.

### PLEADING DEFECT

An issue that may arise on retrial is involved in Minns' fifth point, asserting that Piotrowski did not plead that he intentionally caused her injuries. Minns did not specially except to Piotrowski's Fourth Amended Original Petition, which included allegations that Minns:

> caused ... Anderson to hire ... Steen and ... Ivery to murder your Petitioner ...; ... Ivery fired four shots into Petitioner's body at close range.... The acts of [Minns] were intentional and were calculated to cause severe injury and the [probability] of [the] death of [Piotrowski]. The conduct of [Minns] has been willful, wanton and totally without justification.

We agree with Piotrowski that her pleading gave fair notice to Minns of the basis of her complaints. *See Stoner v. Thompson,* 578 S.W.2d 679, 683 (Tex.1979).

### EXEMPLARY DAMAGES

In two points, Minns asserts that the evidence in support of the jury's answer to the exemplary-damages question is legally or factually insufficient and that the award is excessive, manifestly unjust, and violative of due process. Because the case must be remanded and because at another trial the question of the entitlement to and amount, if any, of exemplary damages will be controlled by *Transportation Ins. Co. v. Moriel,* 879 S.W.2d 10 (Tex.1994), we will not address the award that was made in the 1991 trial.

### CONCLUSION

Having determined that the court erred by abusing its discretion in striking Minns' pleadings and in assessing a monetary sanction having no basis in the record, we reverse the judgment and remand the cause for a new trial.